DEBT.

*Case 87.*

*April 24.*

The case stated.

# Dunn *vs* West and Hackley.

ERROR TO THE GARRARD CIRCUIT.

*Set off.    Statute of frauds.*

JUDGE MARSHALL delivered the opinion of the Court.

In this action brought by Dunn against West and Hackley, on their joint and several bond for $680, a separate claim of West against Dunn, amounting to $437, was, by the intruction of the Court, allowed to be set off, and was, by the verdict and judgment, credited on the plaintiff's demand.    It is contended here as it was in the Circuit Court, that there could be no set off of these demands : 1st. Because the demand of the plaintiff was joint, and the demand against him separate ; and 2d. Because the claim of West is founded on the verbal promise

of Dunn to pay the debt, or "to answer for the debt, default, or miscarriage of another," which not being in writing as required by the statute of frauds, cannot be enforced by way of set off, any more than it could be by action.

1st. Our statute does not, like that of England, use the phrase "mutual debts between the plaintiff and defendant," in describing the demands that may be set off against each other in an action, but says, "it shall be lawful for the defendant on the trial, if the plaintiff be indebted to him, to plead the same," &c. (*Stat. Law,* 1448.) We might not, therefore, feel bound to give precisely the same effect to our statute that had been given to the English statutes, before the enactment of ours; and although we are not disposed to question the propriety under our statute, of the general rule which had been deduced from the English statute, that the debts to be set off must be in the same right, and that a joint debt cannot be set off against a separate demand, nor a separate debt against a joint one, we are at liberty, and indeed bound so to expound the rule itself as not to impair the beneficial operation of the statute. The statute intended, in the first place, to confer a privilege on defendants, by enabling them to use defensively such demands as at their election might be justly applicable to the satisfaction of the plaintiff's claim, and which could obviously be so applied, without involving any possible injury to other parties. It also intended to prevent the necessity of cross actions, where there were demands on each side of the suit, which at the mere will of the parties to either demand, might be set off against each other without affecting the interests of the others not under their control. And it was intended to induce the voluntary settlement of such mutual demands, and thus to discourage unnecessary litigation, by giving to the party sued the right to coerce as a defendant, a discount which his debtor might and ought, upon application, to have allowed before suit.

Now the debt sued for here is due to the plaintiff separately, and the debt offered to be set off against it is due from him separately. So far as the plaintiff is concern-

ed as a party to each demand, each is separate; that which is offered as a set off is entirely within the control of West, or by his consent, of West and Hackley, and no other person but the plaintiff and West, or the plaintiff and West and Hackley, have any interest in either demand, or in the question whether they shall be set off or not, and West and Hackley concur in offering to set off West's demand upon the plaintiff against the plaintiff's demand upon them. Suppose the demand of West against the plaintiff to have been undisputed, and that West and Hackley, or even West alone, had made this offer before the suit was commenced, upon what plausible pretext could Dunn have refused to make the set off? Either of them would have had the right to make payment in discharge of both. The just demand of either against him, would be a fair and proper equivalent for so much of his demand, whether joint or joint and several, against them. He could not be subjected to injury by making the discount; and no other person would be affected by it. What further mutuality of debts or identity of right in which they are held is required? Did the statute intend that there must be a perfect identity of the parties to the suit snd the parties to the debts to be set off, or does it require only such identity as will show that the demands are in substance mutual, that they are in substance, just equivalents so far as they cover the same amount, so that either may be applied as a credit to the other without injury to any.

If we stick to the letter of the statute, there can be no set off but between a single plaintiff and a single defendant, and the debt allowed to be set off must be from the plaintiff in the suit to the defendant. But it has been decided not only that a plaintiff may reply to a plea setting off a debt from him to the defendant, that the suit was brought for the benefit of a third person, but also that the defendant may plead by way of set off, that the suit was brought for the use of a third person, who is indebted to him; *Carlisle* vs *Long,* (1 *A. K. Marshall,* 487;) *Ward* vs *Martin,* (3 *Monroe,* 19;) *Cummings' administrator* vs *Williams' heirs,* (5 *J. J. Marshall,* 385;) and it is immaterial that the third person was not even named

in the declaration as the beneficiary of the suit. If then there may be for the effectuation of the remedial and highly equitable purposes of the statute, such a departure from its letter as to introduce in the precise case described, of a single plaintiff and a single defendant, the equity of a stranger to the record, in order to defeat a legal set off, or to establish an equitable one, we certainly are not bound in extending the provisions of the statute, as must necessarily be done to cases in which there is a plurality of plaintiffs or defendants, to regard the right of set off as being restricted to the case of a complete and perfect identity of the parties to the suit and the parties to the set off. If such identity is not required in the simplest case, and the one expressed in the statute as an example, much less can it be required in those more complicated cases for which no express provision is made.

Upon the principle of the cases just referred to, it could not be doubted that in case of several plaintiffs suing jointly, a plea averring that one of them was beneficially entitled to the whole demand, and offering to set off a debt from that one to the defendant, would be good, and it would seem equally clear that in an action against several, they might plead that one alone was the real debtor, and set off a debt due from the plaintiff or plaintiffs to that one. For if for the purpose of doing substantial justice, a Court of Law may regard one of several plaintiffs, who is entitled to the whole demand, or even a stranger to the record who is thus entitled, as *the plaintiff*, whose debt to the defendant may be pleaded as a set off, so it may discriminate among several defendants and regard the real debtor among them, as *the defendant*, whose demand against the plaintiff is allowed to be set off against the action. But a slight consideration of the subject will show, that there is a substantial difference between the case of offering to set off a demand due to the defendant or defendants from one of several plaintiffs, and that of offering to set off a demand due from the plaintiff or plaintiffs to one of several defendants. Supposing the plaintiffs to be all beneficially interested in the demand sued on, it is wholly immaterial, in view of their

interests and of substantial justice, whether the demand
offered to be set off, and which they owe, is due to one
or all of the defendants, and certainly they have no right
to object on behalf of those defendants who are not le-
gally interested in the set off. They are personally ben-
efitted by it. They are supposed to join in the defence,
and at any rate their concurrence would be sufficiently
proved by mere acquiesence. But in the other case, it
may be very material to those plaintiffs who are not in-
debted to the defendant, that their interest in the joint
demand sued on, should not be converted into a demand
upon an implied assumpsit against a co-plaintiff. The
defendant has no right, in point of justice, to call upon
them to aid their co-plaintiff in paying his debt; great
injury might accrue to them if he could coerce them to
render this assistance, merely because they were co-plain-
tiffs with his debtor. And even when the plaintiff is,
with others not parties to the suit, jointly indebted to the
defendant, as a coercive set off would change his attitude
and rights with regard to his co-debtors, as fixed by the
contract, and would not furnish him with that evidence
against them which a joint proceeding against all would
afford, and as, moreover, he could not be sued separately
for the joint debt, this case, like that of a separate de-
mand against one of several plaintiffs, offered to be set
off against their joint demand upon the defendant, does
not come within the principle of the statute, which in-
tends to affect no injury, but merely to enforce the jus-
tice and equity of the case. While, therefore, we admit
it to be material to the right of set off, that the obligation
of the plaintiff or plaintiffs, which is offered as a set off,
should be of the same nature as the right which is assert-
ed in the suit, that is, that both must be joint or both sev-
eral, and that the right must belong to the same persons
who are embraced in the obligation, we do not perceive
that the statute requires or admits of the requisition that
there should be the same identity of right and obligation
on the part of the defendant. It being as already said,
wholly immaterial to the plaintiff whether his debt offer-
ed as a set off, be due to one or all of the defendants,
and any change of relation which the allowance of the

set off might occasion among them, being voluntarily sought or assumed on their part.

But independently of this view of the subject, which makes it immaterial whether the debt of the plaintiff which is offered to be set off against his demand belongs to one or all of the defendants, and also, whether the defendants are bound to the plaintiff as joint and several obligors, or as joint obligors only, it is to be observed that in this case their obligation is by the contract, several as well as joint; and we do not admit that the obligee is entitled to appropriate to himself all the advantages of this double character of the obligation, and by electing to sue both obligors jointly, to deprive them of any right, which by the nature of the contract, belongs to them. If then it were true that two joint obligors could not set off the plaintiff's debt to one of them, it would not follow necessarily, that joint and several obligors must, because they are sued jointly, be also precluded from that privilege. Either would have the right before suit, or in a separate suit against him, and at his own mere will, to require that the plaintiff's debt to him should be set off against the joint and several obligation. Unquestionably such an offer made before suit, could not be rightfully refused because the creditor had the right to sue both, and for this purpose to treat the obligation as a joint one. And as his election to sue on the obligation as a joint one, does not change its essential character, we think it does not deprive the obligors of any of their separate rights growing out of the nature of the contract.

We are, therefore, of opinion, for reasons already sufficiently indicated, that if as mere joint obligors, the defendants could not avail themselves of the separate demand of one of them against the plaintiff as a set off against his demand upon them jointly, yet being several as well as joint obligors, they are entitled to make the set off, if the demand of West against the plaintiff, would be available as between them alone.

2d. We come, therefore, to the consideration of the second objection made to the allowance of the set off, for the proper understanding of which, it is necessary to state the nature and grounds of the claim of West upon

A promise by one person to indemnify another if he will become surety for a third person, is

Dunn
*vs*
West, &c.

an original pro-
mise and not
within the stat-
ute of frauds.

the plaintiff, as assumed in the instructions of the Court to the jury, and as they are in effect established by the verdict. It appears then, that West became bound in certain obligations with the son of the plaintiff, and at the request of the latter, upon his assuring him, "that he should not pay any thing by it,"—"that he (the plaintiff) would pay the debt himself if his son did not," and that "if he (West) had any thing to pay on the notes, he would pay him back the same." West did become surety in consequence of this promise, paid the money upon judgment and execution, before this suit was brought, and offers to set off his claim for the amount paid, against the plaintiff's demand in suit. The question is, whether this promise of the plaintiff is a promise to answer for the debt, default, or miscarriage of another, within the clause of the statute or frauds which has been quoted.

The usual test applied in ordinary cases for determining whether the promise in question is within the statute, is found in the enquiry whether the promise is a collateral or original one, and whether the credit was given exclusively to the promisor, or whether another person was credited for whom the promisor is collaterally bound. The Court instructed the jury that the set off could not be allowed unless they believed from the evidence, that West executed the notes upon the sole credit of the plaintiff; and as the jury found that he did so execute them, the usual test would seem to have been fully applied in this case. It is contended, however, that the principal in the note was necessarily bound to remunerate West upon his making payment; and therefore, that the engagement of the plaintiff to make the same remuneration, is a promise to pay the debt of his son, and essentially a collateral undertaking. But whether West who became bound upon the sole credit of the plaintiff, could upon payment of the debt, have resorted to the principal, whose debt it was, is itself a question not determined; and although we are inclined to the opinion that even under such circumstances the law would imply an assumpsit on the part of the principal to repay West, who, as his surety in fact had, with his consent, paid his debt for

him, this assumpsit raised upon a subsequent fact, would not prove that there was any contract express or implied, between these parties when the note was executed, and much less that there was any debt between them for which the plaintiff became bound. The plaintiff did not promise to pay West if his son did not pay him, but to pay him if in consequence of his son's failure to pay the original debt to another, West should have to pay that debt. We are not prepared to say that even if West, in becoming surety for the son looked to his liability as well as to the plaintiff's promise, for his ultimate indemnity, the plaintiff's promise should necessarily be regarded as collateral merely. The observations of Judge Story in delivering the opinion of the Supreme Court of the United States in the case of *De Wolf* vs *Raband, &c.*, (1 *Peters*, 500,) point to a case in which there might be a tri-lateral contract in which, though the promise of one of the parties be subsidiary to that of another, and in the nature of security, it is not collateral in the sense in which that word is used in reference to the statute of frauds, and may be enforced though not in writing. But without pursuing this illustration, we think the question now before us, has been substantially decided by the Supreme Court of New York, in the case of *Chapin* vs *Mevill*, (4 *Wendell*, 657,) where that Court decides that the promise of one person to indemnify another for becoming security for a third is an original undertaking, not within the statute of frauds, and enforcible though not made in writing. The same principle is in effect admitted or decided in the case of *Ward* vs *Tryer's executrix*, (19 *Wendell*, 494,) and by the Supreme Court of Massachusetts in *Blake* vs *Cole*, (22 *Pickering*, 97.) The same principle is stated in a note to *Chitty on Contracts*, 5th American edition, page 516, where these and several other cases which we have not examined are referred to.

Upon the authority of these cases, therefore, and because there was no debt from the plaintiff's son to West, which the plaintiff promised to pay in default of payment by his son, but the promise was to pay to West what he should have to pay if he would become surety for the son, we are of opinion that the statute of frauds does not

apply to the case, and that the promise is enforcible by action, and therefore, by way of set off to the note in writing.

Wherefore, the judgment is affirmed.

*Turner* for plaintiff: *Harlan & Craddock and Robertson* for defendants.