DUNCAN v. MILLER ET AL.

64   223<br>f112 520

1. **Mortgage:** TO SECURE CONTINGENT LIABILITY FOR ANOTHER'S BENEFIT: CONSIDERATION. Where the cashier of a bank procured plaintiff to execute his note to the bank, to be used as collateral for the bank's accommodation, and at the time promised to protect plaintiff against loss on account thereof, *held* that the execution of the note was a good consideration for the cashier's promise, and a good consideration, also, for a mortgage afterwards made by him to plaintiff to secure him against his contingent liability on the note. See authorities cited in opinion.

2. ———: MISTAKE IN DESCRIPTION: NOTICE TO SUBSEQUENT ATTACHING CREDITORS: PRIORITY. In such case, where there was a misdescription of the property intended to be conveyed by the mortgage, though unrecorded, but creditors who subsequently attached the property had notice of the mortgage and of the mistake, *held* that the mortgage was the superior lien in equity.

Duncan v. Miller et al.

3. **Practice in Supreme Court:** ABSTRACT FILED TOO LATE. In this case, a motion to strike an amended abstract from the files, because filed too late under the rules, was denied, but the expense of printing the delayed abstract was taxed to the delinquent party.

ADAMS and REED, J J., *dissent* as to the first two points.

*Appeal from Monroe District Court.*

TUESDAY, JULY 22.

ACTION to foreclose a mortgage executed by the defendants, Miller and wife. The defendants, Adams & Eldridge, were made defendants on the ground that they claimed a lien on the property, which the plaintiff claims was junior to the mortgage. Adams & Eldridge filed an answer, and claimed therein that their lien was superior to that of the plaintiff. The court held otherwise, and Adams & Eldridge appeal.

*Barcroft, Bowen & Sickmon,* for appellants.

*Perry & Townsend* and *W. A. Nichol,* for appellee.

SEEVERS, J.—The defendant, Miller, was cashier of the Monroe County Bank, and, as the plaintiff testified, Miller requested the plaintiff to give him a collateral note, that he wanted to borrow some money from the First National Bank of Chicago, to tide him over the run. "I understand it was to tide the bank over the run. I told him I did not like to do that. He insisted that it would not affect me in the least; that I would not have it to pay, for he would protect me. I finally gave him this note for the bank's accommodation." There was no evidence contradictory to this. This transaction occurred on the first day of September, 1882. On the tenth day of that month Miller and wife executed a mortgage on lot seven, in block nine, in the town of Albia, to the plaintiff, to indemnify him from all loss by reason of the execution of the note aforesaid. This mortgage was duly filed for record prior to the time the defendants' lien attached. On the eleventh day of September, 1882, the defendants, Adams &

Eldridge, attached lot one, in block nine, in said town, and afterwards on the same day Miller and wife executed a mortgage to the plaintiff on the attached property for the purpose of indemnifying him from loss by reason of the execution of the note.

The plaintiff claims that the intention was to describe in the first mortgage the same property as in the last; and that this was not done because of mistake; and that the appellants had knowledge of such mistake prior to the issuance and levy of the attachment. We find from the evidence that this is true.

On the seventeenth day of February, 1883, the plaintiff paid the note executed by him, and in this action seeks to foreclose the mortgage executed to him. -

I. It is insisted by counsel for the appellants that there was no consideration for the mortgage, and therefore it cannot be enforced against them as lien creditors of Miller. It seems to us that it should be first determined whether there was any consideration for Miller's promise to protect the plaintiff. The evidence warrants the conclusion that the plaintiff executed the note for the accommodation of the bank, and that Miller promised that he would indemnify the plaintiff from loss if he did so. "If one lends money to another, and at a subsequent time a party not benefited by it promises to see that it is repaid, such promise is void, because no consideration passes from the promisee to the promisor. But if the promisor requests the loan, or if his promise is made previous to the loan, or at the same time, then it will be supposed that the loan is made because of the promise." 1 Parsons on Contracts, 469. In *Chapin v. Merrill*, 4 Wend., 657, it was held that "a promise by one person to indemnify another for becoming a guarantor for a third, is not within the statute of frauds. Such promise need not be in writing, and the assumption of the responsibility is a sufficient consideration for the promise." See also *Holmes v. Knights*, 10 N. H., 175; *Dunn v. West*, 5 B. Mon., 376; *Lucas v. Chamber-*

*1. MORTGAGE: to secure contingent liability for another's benefit: consideration.*

*lain*, 8 Id., 276. In the present case, Miller promised to indemnify the plaintiff at the time the latter executed the note, and thereby assumed a liability which he would not otherwise have incurred, and, therefore, it seems to us that there was a sufficient consideration for Miller's promise.

II. Having determined that there was a sufficient consideration for the promise, it would seem to follow that there was a sufficient consideration for the mortgage. In THE SAME. consideration of the promise to indemnify him from loss, the plaintiff executed a promissory note, which had passed into the hands of a holder for value, and thereby an indebtedness was incurred which, between the plaintiff and the holder, the former was primarily liable to pay. About ten days after the execution of the note, the plaintiff requested Miller to execute the mortgage as security for the promise, and the mortgage was given for this purpose. "In a mortgage of indemnity, the liability of the mortgagee to loss or damage is a sufficient consideration for the mortgage. A liability to loss on the part of the mortgagee is a consideration for the mortgage given to secure him against it, as much as is a direct benefit to the mortgagor, of whatever nature it may be." Jones on Mortgages, § 610; *Magruder v. State Bank*, 18 Ark., 9; *Haden v. Buddensick*, 49 How. Pr., 241; *Simpson v. Robert*, 35 Ga., 180. It is true, there was no absolute certainty that the plaintiff would have to pay the note, but his liability to do so was fixed and certain. Such liability was assumed in consequence of Miller's promise of indemnity, and the mortgage was executed at the plaintiff's request, and for such purpose. It is not essential that any consideration should pass at the time of the execution of the mortgage. That may be either a prior or a subsequent matter. Mortgages are frequently given to secure existing debts, in which cases the consideration is generally altogether a past one. Jones on Mortgages, § 611; *Wright v. Bundy*, 11 Ind., 398; *Cooley v. Hobart*, 8 Iowa, 358.

III. The appellants are not purchasers for value; they

are lien creditors, by virtue of the attachment. Prior to the levy they had notice of the misdescription and mistake in the first mortgage. Therefore, they had notice that the plaintiff, as against Miller, was entitled in equity to have the mortgage corrected. By the levy of the attachment, appellants obtained a lien on any interest Miller had, and nothing more. The right to correct the mortgage against them, therefore, existed. A mortgage is valid without being recorded, except against purchasers or mortgagees. An unrecorded mortgage is valid against a judgment or attachment lien. *First National Bank v. Hayzlett*, 40 Iowa, 659, and cases cited. We see no reason why lands omitted by mistake from a mortgage may not be regarded as conveyed by an unrecorded mortgage, so far as a subsequent judgment or attachment is concerned, and the lien of the judgment or attachment regarded as subject to the equity of the mortgage; and it has been so held in *Galway v. Malchow*, 7 Neb., 285. It is claimed by counsel that the mortgage should be regarded as fraudulent, but this is based on the thought that it was executed voluntarily and without consideration.

*2. ——: mistake in description: notice to subsequent attaching creditors: priority.*

IV. Appellant has filed a motion to strike an amended abstract from the files, on the ground that it was not filed within the time required by the rules of the court. The motion will be overruled, but appellee must pay the costs of printing the additional abstract.

*3. PRACTICE in supreme court: abstract filed too late.*

AFFIRMED.

ADAMS, J., *dissenting*. Where a debtor undertakes to cover his property by a mortgage, executed without consideration, such mortgage will be set aside or postponed at the instance of a creditor having a lien upon the property mortgaged. So far there is no controversy; we differ when we come to the question of consideration.

The mortgage was executed in October, 1882, a month and ten days after the original transaction. Duncan parted with

nothing at that time, and Miller received nothing, either then or at any other time.

I concede that a mortgage given for an antecedent debt is not without consideration, if the debt is the debt of the mortgagor. But, in the case at bar, not only was no debt due to Duncan from the mortgagor, but no debt was due him from any one. If we sustain this mortgage as against a lien creditor, we shall go much further than any case that I have been able to discover.

What are the exact facts of this case? When Duncan gave his accommodation note, there arose an implied promise on the part of the bank to keep him unharmed. Afterwards, when Duncan paid the note, the bank for the first time became indebted to him. Miller, at the outset, and also when he made the mortgage in question, was at most a mere guarantor of a party who was a mere indemnifier. That there was no debt at the time for which Miller could be liable, see *Thomas v. Cook*, 8 B. & C., 728; *Jones v. Shorter*, 1 Ga., 294; *Chapin v. Merrill*, 4 Wend., 657; *Holmes v. Knights*, 10 N. H., 175; *Dunn v. West*, 5 B. Mon., 376; *Lucas v. Chamberlain*, 8 Id., 276.

We should bear in mind another thing, and that is, that Miller did not promise to give this mortgage when Duncan gave his note. His promise was merely to protect. That, if anything, was a promise to pay if the bank did not; if it could be enforced at all, it could be enforced only by compelling payment, and not by compelling the execution of a mortgage. There was, then, no antecedent obligation to give the mortgage, and, there being no indebtedness to Duncan at that time as a consideration, I do not see how the mortgage can be sustained as against a lien creditor.

But the plaintiff has, if possible, even a deeper trouble than that. He did not even have a mortgage upon the property at the time the attachment was levied. It is said, to be sure, that he had an equitable right to a mortgage. But I do not understand that he had, under the authorities. If he had

parted with something at the time he took his mistaken mortgage, and on the strength of a promise of a mortgage upon the property in question, the fact that he parted with something would have given him an equitable right to a mortgage upon the property agreed upon. But he not only did not become a creditor at that time, but he was not even an antecedent creditor.

I do not think, indeed, that the case would be different if he had been an antecedent creditor. An abortive attempt by one antecedent creditor to secure a lien by mortgage could not give him a superior equity over another antecedent creditor who has made a successful attempt to secure a lien by attachment. In my opinion the right to foreclose as against these attaching creditors should have been denied, or the lien by attachment held paramount.

Mr. Justice REED concurs in this dissent.