IN RE ESTATE OF AARON LEWIS.

SECURITIES ACCEPTANCE CORPORATION, Appellant, v. DOROTHY LEWIS, Administratrix, Appellee.

No. 45596.

JUNE 17, 1941.

REHEARING DENIED SEPTEMBER 26, 1941.

A. J. Meyers and William P. Kelly, for appellant.

G. C. Stuart and A. V. Hass, for appellee.

BLISS, J.—The cause was submitted on an agreed statement of the facts, together with certain exhibits. Aaron Lewis, the owner and operator of the M. & M. Chevrolet Company, of Chariton, had received by rail, from the General Motors Company, four Chevrolet automobiles, with sight draft and bill of lading attached, which papers were forwarded to the First State Bank of Chariton. The sight draft was for $2,227.15, plus an exchange charge of $1. Not having funds to pay the draft to secure the bill of lading and the automobiles, Lewis solicited the

aid of the claimant for money to pay the purchase price. The claimant agreed to provide $2,000 for this purpose in consideration of Lewis executing to it his note for $2,025, together with his purchase-money mortgage covering these automobiles, as security, providing Lewis would pay the balance of $228.15. The note and mortgage were executed and delivered about noon on Saturday, August 10, 1940, together with a check of Lewis' for $228.15 payable to claimant. About 2 o'clock that afternoon, the claimant delivered its check for $2,000, and the Lewis check indorsed by it to the bank and received the bill of lading which it delivered to Lewis, and he thereby possessed himself of the automobiles the same afternoon. Thereafter Lewis committed suicide and his dead body was found about half past 12 o'clock, Monday afternoon, August 12, 1940. The mortgage was filed for record in the office of the Lucas County Recorder at 2:20 o'clock that same afternoon. The automobiles were in the possession of Lewis at his garage in Chariton at the time of his death and remained there until sold by the Administratrix, as stipulated. The proceeds of their sale were several hundred dollars in excess of appellant's claim. The check of Lewis for $228.15 did not clear and claimant had to pay that amount to the First State Bank. Lewis was insolvent at his death and at all times mentioned herein, and general and unsecured claims have been allowed, or will be, against his estate in excess of the assets thereof, including the proceeds from the sale of these mortgaged automobiles. It was stipulated that if each creditor of the estate were present as a witness, he would testify that he had no actual knowledge or notice of the chattel mortgage at the time of decedent's death. He was last seen alive about 10:30 o'clock on Monday forenoon.

The trial court held that because Lewis had possession of the automobiles at his death, and the mortgage at that time had not been recorded or filed for record, it was invalid as against the Administratrix. He, therefore, denied the application of claimant, and rendered judgment against it for the costs. In its opinion, the trial court stated that its order and judgment could not be otherwise in view of the decisions of this court in Blackman v. Baxter, Reed & Co., 125 Iowa 118, 100 N. W. 75,

70 L. R. A. 250, 2 Ann. Cas. 707, and Raybourn v. Creger, 204 Iowa 961, 216 N. W. 272.

Appellant has urged us to reverse for two reasons: first, the fact that its mortgage was a purchase-money mortgage to secure the payment of money which it had advanced for the very purpose of procuring for Lewis the automobiles which his Administratrix now claims on behalf of general creditors of the estate free from the lien of the mortgage; second, that the decisions of this court in the Blackman and the Raybourn cases, and in In re Estate of Blackman, 143 Iowa 553, 120 N. W. 664, so far as they are applicable to this case, should be reversed as unsound law.

I. Taking up the first proposition advanced by appellant, it appears to us that the very statement of it shows its right and equity. Briefly, the facts are that Lewis was attempting to carry on his automobile business under financial difficulties. His assets were insufficient to meet his obligations as they matured. He was insolvent. Just what the percentage of insolvency was does not appear. This condition existed prior to the inception of this transaction. When the four Chevrolet automobiles, which he had ordered, arrived, he was unable to lift the bill of lading, so that he might unload them and take them to his place of business. The appellant came to his financial assistance in the manner already described. It paid for him the amount necessary—$2,000, when the bill of lading was secured, and $228.15 when the Lewis check was charged back to it. When it procured the bill of lading, it was, in equity, the owner of these automobiles. At least, it held an instrument entitling it to their possession. The delivery of their possession to Lewis by means of the bill of lading, which it handed to him, and the execution of the purchase-money note and mortgage, were all a part of one transaction. What Lewis, in reality and in equity, became the owner of, was not the four automobiles, but only the value therein over and above $2,000. The latter value never became his property. There is no difference in principle respecting rights under a purchase-money mortgage, whether the property mortgaged be personal or real property. The general rule is that a purchase-money mortgage, made at the time of the conveyance of the property to the mortgagor and

a part of the transaction, is entitled to preference over all other existing judgments or other obligations of the mortgagor. The nature of the instrument and of rights thereunder is well stated by De Graff, J., in Keefe v. Cropper, 196 Iowa 1179, 1181, 194 N. W. 305, 306:

"Our first inquiry may well be directed to the underlying principle of a purchase-money mortgage and the essence of its priority. A purchase-money mortgage is what the term implies, and is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and without stopping, vests in the mortgagee. It follows, therefore, that no lien of any character can attach to the title of the mortgagee and that the title and interest has preference over previous judgments against the purchaser-mortgagor. [Citing cases.]

"The intent to create the mortgage at the time the mortgagor takes the legal title is the element that carries the priority, and when it exists the mortgage in the eyes of equity is a purchase-money mortgage."

This has been the uniform holding of this court, and of courts generally. Kaiser v. Lembeck, 55 Iowa 244, 7 N. W. 519; Laidley v. Aikin, 80 Iowa 112, 45 N. W. 384, 20 Am. St. Rep. 408; Kent v. Bailey, 181 Iowa 489, 164 N. W. 852; Phelps v. Fockler, 61 Iowa 340, 14 N. W. 729, 16 N. W. 210; Vigars v. Hewins, 184 Iowa 683, 169 N. W. 119; Ely Sav. Bank v. Graham, 201 Iowa 840, 208 N. W. 312; 4 Kent's Commentaries, pages 173 and 174; Holbrook v. Finney, 4 Mass. 566, 3 Am. Dec. 243; 1 Jones on Mortgages, 8th Ed., page 787, section 582 et seq. The reasons given for the principle were thus stated in the early case of Banning v. Edes, 6 Minn. 402, 410:

"By the mortgage a condition was annexed to the grant, and whatever passed by the grant passed subject to the condition. There was no moment of time when Baker owned or held the premises free from the condition, nor when he could voluntarily have conveyed them, except subject to the mortgage. Can a judgment creditor then, by virtue of his judgment, ob-

tain a greater interest in the premises than the debtor himself had? I think it is well settled, that the lien of the judgment will in all cases be limited to the actual interest which the judgment debtor has in the estate. [Citing authorities.] The rule is based on principles of justice and public policy, as well as common sense, and can work no hardship to the judgment creditor. So far as the contract between Pairo and Baker is concerned, there can be no question but that it was the intent to give Pairo the first lien on the premises; nor can it be claimed that he would have parted with the premises on any other condition. The judgment creditor having parted with nothing on the strength of this conveyance to Baker, it would be highly inequitable to permit the judgment to be satisfied out of what, in fact, was Pairo's property."

█ While the instantaneous holding by the mortgagor is usually given as a reason for the principle, we prefer the thought of the Minnesota court, in Stewart v. Smith, 36 Minn. 82, 84, 30 N. W. 430, 431, 1 Am. St. Rep. 651, 652, that it is rather "the superior equity which the mortgagee has to be paid the purchase-money of the land before it shall be subjected to other claims against the purchaser", than the mere transitory seisin of the mortgagor.

Perhaps a more exact statement is that of Judge Gardner of the Eighth Federal Circuit, in Troyer v. Mundy, Neb., 60 F. 2d 818, 821:

"The original mortgage given to defendant's father was without question a purchase-money mortgage. As such it was entitled to the highest consideration of a court of equity, taking precedence over prior judgments and all other existing and subsequent claims and liens against the mortgagor to the extent of the land sold. *In effect it was a limitation upon the title which Peter Mundy took,* rather than an incumbrance upon the title conveyed [Citing cases.]." (Italics ours.)

Somewhat the same thought is expressed by the Kansas court, in Warren Mortgage Co. v. Winters, 94 Kan. 615, 619, 146 P. 1012, 1013, Ann. Cas. 1916C, 956, 958:

"One who executes a purchase-money mortgage is not re-

garded as obtaining the title and then placing an incumbrance on it. He is deemed to take the title charged with the incumbrance, which has priority even over preëxisting claims."

It is immaterial whether the mortgage runs to the vendor, as mortgagee, or to a third person, who as a part of the same transaction, advances the purchase money. Kaiser v. Lembeck, 55 Iowa 244, Kent v. Bailey, 181 Iowa 489, Vigars v. Hewins, 184 Iowa 683, 688, Laidley v. Aikin, 80 Iowa 112, all cited above; 2 Pomeroy's Equity Jurisprudence, 3d Ed., 1280, section 725; 1 Jones on Mortgages, 8th Ed., 799, section 586.

In this case, Lewis never received but a limited interest and ownership in these automobiles. It was only this limited interest and ownership which he could, and which he did, pass on to his estate and its Administratrix. The remaining interest, the amount of the purchase price furnished, was at all times in the Securities Acceptance Corporation. It never became a part of his property nor a part of his estate, and, therefore, never became subject or liable to the claims of the estate, or of its other creditors.

The appellee contends that this is all obviated by the fact that the mortgage was not recorded until after the death of Lewis; that he retained possession of the automobiles; and, that his estate is insolvent.

Section 10015 of the 1939 Code of Iowa provides that "No sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice" unless the instrument is recorded as provided in the section. Recording is not a part of the execution, and an unrecorded instrument is valid as between the parties. Knowledge of the instrument, or notice that would lead to knowledge is the equivalent of recording. This court has uniformly held that the term "existing creditors", as used in the statute, means general creditors, who have, by execution or attachment, levied upon the mortgaged property, or otherwise acquired a lien thereon, without notice of the mortgage on the part of the creditor, or of the levying officer. Warner v. Jameson, 52 Iowa 70, 2 N. W. 951;

Duncan v. Miller, 64 Iowa 223, 227, 20 N. W. 161; Orr v. Kenworthy, 143 Iowa 6, 121 N. W. 539, 136 Am. St. Rep. 728; Murphy v. Murphy, 126 Iowa 57, 101 N. W. 486; Martin v. Fritz, 194 Iowa 740, 190 N. W. 514; International Harvester Co. v. Poduska, 211 Iowa 892, 232 N. W. 67, 77 A. L. R. 973. The statute necessarily has no application to the parties to the instrument or to their privies. It was enacted for the protection of third parties, classified under the designation of "existing creditors" and "subsequent purchasers." The purpose of such statutes has been well stated, in Wiltshire v. Warburton, 4 Cir., Va., 59 F. 2d 611, 615, thus:

" 'One of the most important purposes, if not the most important, of the recording acts is to prevent fraud upon innocent subsequent purchasers and upon creditors who may and frequently do act upon the false credit which the debtor is able to obtain by reason of the appearance of ownership of property. Here, no. such situation exists. No creditor could possibly be heard to say he was mislead into extending credit * * *.' "

The fact of recording is an evidence of good faith between the parties to the instrument, public notice to all of the particular transaction, thus giving opportunity for protection to those having business dealings with either party, and fostering confidence in the business community.

There is no claim or the slightest proof in this case that the transaction between the appellant and Lewis was not strictly legitimate and free from. fraud. It was a valid transaction in every way. There was no fraud upon any subsequent purchaser or other existing creditor. No such person changed his position or status in any way because of this transaction. No such person was misled to his hurt. Every such creditor was benefited by the transaction, because several hundred dollars were added to the assets of the estate, and the percentage of solvency was increased.

If the transaction between the appellant and Lewis on the 10th of August, 1940, was then valid—and no one contends that it was not—then it was valid when Lewis died. Death does not ordinarily change the property rights of the parties to a valid contract, at least not to the extent of destroying them. Neither

the general creditors of Lewis, nor the appellant gained or lost by the death of Lewis, nor was their relation to or rights in the mortgaged automobiles changed in any way. Since appellant's mortgage, as between it and Lewis, was not invalid during the life of Lewis, simply because it was not recorded, his death could not make it invalid, and thus destroy appellant's property rights in the automobiles. It may be conceded that since the estate of Lewis is insolvent, the Administratrix must administer the assets and distribute the proceeds in accordance with the provisions of Code sections 11969 and 11970. It may also be conceded that if the proceeds are sufficient, there may be something for the creditors after paying the preferred obligations. But any rights the creditors may have are limited strictly to the assets of the estate—to the property which deceased owned when he died. They are not entitled to claim or to take property which belonged to someone else. The Administratrix represents all persons who have an interest in the estate. She represents and is bound to protect, not alone the general creditors or the existing creditors under Code section 10015, but she must protect the interests of the appellant, as the claimant or holder of a superior right to any of the property in her possession or control. With respect to the proceeds of the sale of these automobiles, the Administratrix may take for distribution as assets of the estate, only such part thereof as is in excess of the purchase money paid by the appellant. The transaction between appellant and Lewis was a lawful and legitimate one. It was not in fraud of creditors, or so intended. It was valid as between appellant and Lewis. The Administratrix has no greater interest in the automobiles or their proceeds than Lewis would have had. The same is true of the general creditors or claimants against the estate. And the fact that Lewis died insolvent does not strengthen or add to their rights.

In Charlottesville Hardware Co. v. Perkins, 118 Va. 34, 37, 38, 86 S. E. 869, 870, it appears that Walker conveyed land to Elam who executed a purchase-money mortgage to the grantor. The deed and mortgage were both executed on August 22, 1912, the deed was recorded September 22, 1912, but the mortgage was not recorded until September 5, 1913. On July 11, 1913, the Hardware Company procured a judgment against Elam.

In affirming a judgment giving priority to the purchase-money mortgage held by Walker, the court said:

"Coming now to consider the judgment of the Charlottesville Hardware Company, it seems equally clear that as to this claim also the Walker deed of trust must be given precedence, for the reason that until Walker's debt is paid there is no interest in J. R. Elam upon which the judgment can attach as a lien. It is argued that this view denies to the judgment creditor the benefit of the registry statutes, but, as will hereinafter more fully appear, the question at issue is controlled by considerations which are not in conflict with, but overreach and are entirely independent of, the provisions of the recording acts."

After commenting upon the fact that the deed and mortgage were parts of the same transaction, the court continued:

"The legal result is that there was, as against Walker's debt, no beneficial, but merely an instantaneous or transitory seisin in Elam, and not such an interest as could become subject to the lien of either prior or subsequent judgments."

The court also referred to the case of Cowardin v. Anderson, 78 Va. 88, wherein one Coulling had taken a deed and at once had given a mortgage to Courtney, who had advanced the money to Coulling to make the purchase. Both instruments were delivered on May 30, 1872, but neither were properly recorded. Anderson obtained judgment against Coulling, the mortgagor, on February 16, 1875, and sought to subject the land to his judgment, relying upon the defective recordation of the deed of trust. In holding that the rights under the deed of trust were superior to any claim under the judgment, the court in Cowardin v. Anderson, page 91, said:

"Having thus shown that Coulling was at no time invested with such an interest in the land, as against the trust deed, as could be subjected to the claims of judgment creditors, whose judgments had been previously obtained and docketed, there is no reason why a creditor, with a judgment subsequently obtained, should, because of the failure to record the trust deed, occupy a more favorable position, or require any better right

than Coulling himself had, in whose shoes he must stand. The error in the ruling of the chancery court grows out of the idea that the trust deed was a separate and distinct contract, instead of being, as we have seen it was, merely a part of a transaction, of which the other part was the deed of bargain and sale * * *''

Of a like situation, the Virginia court in Shipe, Cloud & Co. v. Repass, 28 Grattan (69 Va.) 716, 722, said:

''* * * the question is not to be determined by the provisions of the registry acts. It must depend upon principles outside of and independent of those acts. Whether the contract of sale was recorded or not, can make no difference. The lien of the judgment creditor operates only on the estate which belongs to the debtor.''

In the case before us, none of the existing creditors had procured liens by levies under writs of execution or attachment. None of them could qualify as existing creditors as defined by this court in Warner v. Jameson (52 Iowa 70) and other cases herein cited immediately following it. Under our holding in Blackman v. Baxter, Reed & Co., supra (125 Iowa 118), the Administrator of an insolvent estate primarily represents the creditors of the estate, and from the death of the debtor, has all of the rights under Code section 10015, of a creditor who had obtained such a lien. The reasons given for so holding are thus stated in the majority opinion in that case, on pages 122 and 127 of the report:

"True, the creditor acquires no lien such as is obtained by the levy of a writ of attachment or execution. The statute does not declare such a lien essential. A levy is sufficient merely because it creates such a right to the property as that the plaintiff may resort to the courts for its protection. The lien created by the levy of a writ of attachment or execution, as distinguished from some other right to or interest in the property mortgaged, has never been held by this court to be essential before assailing an instrument as invalid because unrecorded. A right to the property obtained in any other way is quite as effective. * * *

"In an insolvent estate that title and possession is in the

trustee [administrator] for the benefit of creditors. Their interest in the property attaches the instant of the decedent's death, and, as representing them, the administrator may insist upon the invalidity of the unrecorded mortgage. The result is equitable, for it avoids clandestine preferences, and distributes the assets of the insolvent estate among all creditors alike.''

There was an able dissenting opinion. The authorities are in much conflict on the question. We do not find it necessary to pass upon the soundness or unsoundness of the court's opinion in that case, as urged upon us by the appellant. In our judgment, that decision does not rule this case. As stated before herein, under the holding in the Blackman case, the general creditors and the Administratrix, as their representative, would have an interest in and a claim upon, only, such property as belonged to the estate. This property, with respect to the automobiles, was only the equity or value therein in excess of the amount of the appellant's mortgage. In the Blackman case, the chattel mortgage was not a purchase-money mortgage. The mortgagor owned and had title to the property when he gave the mortgage. It was a mortgage to secure a past indebtedness, on property which was owned by the debtor, apparently when the other creditors extended credit to him. Furthermore, if we should hold, as was done in the Blackman case, that the mortgage was invalid, we would necessarily have to hold that the entire transaction with Lewis would have to be set aside. The procuring of the property for Lewis by the appellant, and the giving of the note and mortgage by Lewis to the appellant, were but dependent parts of one transaction. If the first is to stand, then the second must stand. Any other decision would effect a gross injustice upon the appellant. By agreement of the parties, the automobiles have been sold and the proceeds are being held in trust for distribution in accord with our decision. The appellant is entitled to be paid from said trust fund the sum of $2,025, with such interest as may be lawful. The judgment appealed from is, therefore, reversed and remanded and the district court is ordered to render and enter judgment in conformity

herewith, taxing all costs against the defendant.—Reversed and remanded with instructions.

HALE, C. J., and GARFIELD, MILLER, SAGER, MITCHELL, and STIGER, JJ., concur.

OLIVER, J., dissents.

OLIVER, J. (dissenting)—I respectfully dissent. Code section 10015 provides that no chattel mortgage is valid against existing creditors, without notice, unless duly recorded or filed. An "existing creditor" under this statute, means one who has obtained a lien, as by attachment, execution or otherwise, upon the property. Under the doctrine of the Blackman cases and Rayburn v. Creger, supra, the general creditors of deceased insolvent mortgagor became "existing creditors" within the meaning of the statute, as of the time of his death. At that time they obtained a lien upon the property and they were "creditors" without notice. Therefore, under the plain provisions of the statute the chattel mortgage was not valid against them.

But the majority opinion appears to hold that the chattel mortgage was not subject to the provisions of the recording acts because it was a purchase money mortgage. It should be sufficient answer to this that the statute makes no such exception. It recites, "No * * * mortgage of personal property * * * is valid * * *." Nor, despite diligent research, has the majority been able to point to any cases which hold this statute is not applicable to purchase money mortgages. On the contrary, the fair inference to be drawn from the authorities is that the statute does include such mortgages. Illustrative cases are Wertheimer & Degen v. Parsons, 209 Iowa 1241, 229 N. W. 829; Slimmer & Thomas v. Lawler, 205 Iowa 813, 218 N. W. 516; Strand v. Jones County, 228 Iowa 875, 293 N. W. 477.

The majority opinion is largely based upon the following statements:

"In this case, Lewis never received but a limited interest and ownership in these automobiles. * * * The remaining interest, the amount of the purchase price furnished, was at all times in the Securities Acceptance Corporation. It never be-

came a part of his property nor a part of his estate, and, therefore, never became subject or liable to the claims of the estate, or of its other creditors.''

I do not agree that one who buys personalty which is subject to a purchase money mortgage has a limited ownership in the property itself. He owns the property absolutely and the purchase money mortgage is merely a lien upon it the same as any other mortgage. If the quoted statements are correct, no bona fide purchase money mortgage need be recorded, because as to the unpaid balance the property ''never became a part of his [the buyer's] property''.

It is true a purchase money mortgage is superior to previous liens or claims arising through the purchaser, such as prior judgments which are liens upon real estate. But the question here involves the rights of creditors whose liens attached after the mortgage was executed and the answer turns upon the effect of failure to file or record under the recording act, Code section 10015.

I would affirm the judgment of the trial court.