GILMORE & RULE v. THE KILPATRICK-KOCH DRY GOODS COMPANY, Appellant.

**Chattel Mortgage:** FRAUD: *Possession.* Provision that the mortgagee in a chattel mortgage will not take possession till default, unless necessary for protection against other creditors, is not *per se* fraudulent.

SAME: *Recording.* A recorded chattel mortgage is not fraudulent where possession of the property is retained by the mortgagor, though the instrument giving him right to possession is separate from the mortgage, and not recorded.

CONVERSION: *Waiver.* One who wrongfully takes part of the chattels subject to a mortgage cannot claim that the mortgagee abandons his mortgage, and waived his right against him as to the chattles so taken, by taking a decree of foreclosure on the remaining chattles only.

**Construction of the Word " Us."** The interest of B as chattel mortgagee being as cashier of a bank, the word "us," in an agreement signed in his name and given the mortgagor, reciting: "It is hereby agreed that B, cashier, shall not take possession  *  *  * until default therein, unless such action shall be necessary to protect us against other creditors," does not refer to the mortgagor and B, but to the bank.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

THURSDAY, FEBRUARY 4, 1897.

IN November, 1890, E. J. Trowbridge was a merchant at Manilla, Iowa. He had a stock of goods and other property, aggregating about thirteen thousand dollars in value. One Bennett, a cashier of a bank at Manning, was a creditor of Trowbridge, in the sum of about two thousand dollars. November 19, 1890,

Bennett brought suit on his claim in the Crawford district court, aided by attachment, and levied the same on the stock of goods. On the same day seven other suits were commenced by creditors of Trowbridge, and in each case attachments issued and were levied on the property. All the attaching creditors were represented by Shaw & Kuehnle as attorneys. After the levy of the attachments, arrangements were made so that a chattel mortgage on the stock to each of the creditors was executed, giving priority in the order of their liens by virtue of the attachments, which gave to Bennett the first mortgage, and to the plaintiff in this suit the last one. Soon after, the defendant in this suit, a resident of Omaha, Neb., being a creditor of Trowbridge, in the sum of over two thousand dollars, instituted a suit in the federal court at Council Bluffs, aided by attachment, and levied on a part of the stock covered by the mortgages that we have mentioned. The property so taken was, under orders of the court, sold as perishable, and the proceeds were afterwards applied on the judgment obtained in that case. This action is to recover for the conversion of the mortgaged property to the extent of plaintiffs' interest therein. The answer is in some eight divisions, and fraud is pleaded in various forms therein, the particulars of which can be better noticed in the opinion as the different claims are considered. After the answer was filed, the cause, on motion of the defendant, was transferred and tried as an equitable action. The district court gave judgment for plaintiffs in the sum of eight hundred and twenty-six dollars and fifteen cents, and the defendant appealed.—*Affirmed.*

*Harl & McCabe* for appellant.

*Flickinger Bros.* for appellees.

GRANGER, J.—I.   The weight of appellant's argument is directed to the Bennett mortgage as being fraudulent, and then, because of the relation to it of the other mortgages, executed at the same time, and in pursuance of the same agreement, it is urged that all are fraudulent.   After a review of the record we reach the conclusion that the transactions complained of are none of them fraudulent.   A fact upon which a claim of fraud is based is that a separate instrument, affecting the Bennett mortgage, was executed, and it is as follows: "E. J. Trowbridge, Manilla, Iowa:  It is hereby agreed that F. A. Bennett, cashier, shall not take possession under the chattel mortgage this day given to him until default therein, unless such action shall be necessary to protect us against other creditors.  [Signed] F. A. Bennett, by Shaw & Kuehnle."  The particular complaint is, that the instrument is an agreement between Trobridge and Bennett, to protect themselves from other creditors; that is, both Trowbridge and Bennett.  The word "us" in the instrument is construed as meaning the parties we have named.   There is nothing, independent of the instrument, to aid such a construction, and the instrument itself is against it. The words "protect us against other creditors" show that whoever was to be protected against other creditors was a creditor of Trowbridge, and the construction claimed is inconsistent with such a conclusion.   It appears from the record that Bennett's interest as mortgagee was as cashier of the bank.   He is so described, and we have no doubt that the word "us" in the instrument means the bank. The plural form of the expression used is not unusual, where one of a firm, or corporation, consisting of an aggregation of persons, refers to the firm, or corporation.   It indicates that the person speaking has in

mind the persons interested constituting the organization. It is a convenient and quite general form of expression in business intercourse. It is urged that an agreement by which Trowbridge was to have possession of the property for a definite period, save upon the happening of one contingency, makes the mortgage fraudulent. It is the law that a mortgagee is entitled to the possession of mortgaged personal property in the absence of stipulations in the mortgage to the contrary. McClain's Code, section 4189. This provision has repeatedly been sustained by this court, and is not questioned. But it is said that no case sustains a provision like the one we are considering, where the mortgagor has the right of possession for a definite period. The statute for permitting a stipulation for possession in the mortgagor places no limitation on such right. Of course, the statute is not designed to protect fraud. A stipulation like the one in question is no more fraudulent *per se* than one for such possession without a fixed time, but at the pleasure of the mortgagee. It is true that either might be made a cover for fraud, but the law does not make it so. It is also said that, with the period of sixty days for possession in Trowbridge, his interest in the property was subject to execution. It is doubtful, in any event, under the particular stipulation, if that would be so, for the right to such possession is conditional only; but, if absolute, the right, subject to execution, would only be the right of Trowbridge, and not the right belonging to the mortgagees under the mortgage,—that is, the mortgagees would have the same rights against the purchaser under execution sale they would have against the mortgagor. The result would simply be to transfer a right of possession from one party to another. It is not easy to see how such a condition of a mortgage would be, in itself, fraudulent. It is still further urged that, because

the instrument giving the right of possession was not of record, the mortgage is fraudulent; that the possession by the mortgagor is not fraudulent only when the mortgage is recorded. This mortgage was recorded, but the instrument giving the right of possession was not. The record gave notice to all of the facts of the mortgage and its terms. Trowbridge was in fact in possession, and openly so, so that all men had notice of such fact. It is not specified in the law, fixing the right of possession in the absence of a stipulation, that a stipulation fixing it otherwise shall be a part of the mortgage. With the mortgage of record, and with Trowbridge in possession openly, we think no creditor would be presumably defrauded. The situation was such that inquiry would lead to all needful information. There is some claim that the facts show that the conditions of the mortgage in question, and what transpired after its execution, show the fraudulent intent in its execution. Nothing of that kind appears to us. Some circumstances may tend to show that Trowbridge acted with such intent after the execution, but we see nothing to in any degree show such a purpose on the part of Bennett, either before or after the execution of the mortgage. The claim of fraud as to the other mortgages, as we have said, is based on the fact of fraud in taking the Bennett mortgage, because they were taken with knowledge by the mortgagees of the facts urged as constituting the fraud. With our conclusion as to the Bennett mortgage, it is not necessary to pursue the question of fraud further.

II. It appears that all of the eight mortgages taken prior to the attachment seizure of defendant, were foreclosed in the Crawford district court, and decrees of foreclosure entered. In the case of the plaintiff against Trowbridge for said foreclosure, judgment was entered for plaintiff for eight

hundred and seventy-seven dollars and forty cents, and a decree of foreclosure. These decrees of foreclosure were upon all the stock except the part levied upon and taken by the defendant. It is now urged that, by the election to thus proceed, there was an abandonment of the mortgage upon the goods taken by defendant. In argument, the situation is likened to a case where one sues on part of an account, so that a right of action for the remainder is lost. The position is hardly tenable. The entire claim was put in judgment, and a decree was taken subjecting such property as remained, and could be so subjected, to a special execution for the payment of the judgment. The property as to which a decree was not taken, had been wrongfully taken and appropriated by defendant in this case, and it is not in a position to complain that plaintiff did not ask a foreclosure as to such property. So far as we can know from the record, such an attempt would have been fruitless. However that may be, defendant is not in a position to complain. This case is precisely within the rule of *Meyer v. Gage*, 65 Iowa, 606 (22 N. W. Rep. 892). The act of taking the property on the attachment from the federal court, was a trespass, for which defendant is liable in this action. As a trespasser, it is not in a condition to complain because plaintiff has not so proceeded as to protect for it the fruits of its wrongdoing. *Evans v. Harvester Works*, 63 Iowa, 204 (18 N. W. Rep. 881); *Holden v. Cox*, 60 Iowa, 449 (15 N. W. Rep. 269). The rule, cited from Jones on Mortgages, that where one enforces his lien on one part only, he thereby waives his lien as to the remainder, does not apply. We understand that, under the decrees in the Crawford district court, the property remaining was applied in satisfaction of the judgments in the order of their priority, and that, as plaintiff's was the junior lien, its claim was unpaid,

and hence its damage because of the trespass is clear and unmistakable. There is nothing in the record that should reverse the judgment, and it must stand AFFIRMED.