B. Anundsen, Plaintiff, v. The Standard Printing Co., and The Decorah Printing Co., Defendants. Gena Hansen, et al., labor claimants, Appellees. Van Allens and Boughton, interveners, Appellants.

**Labor liens:** priority. Labor claimants under Code, sections 4019–4022, have a preference over a mortgagee of property which had been levied upon under a landlord's writ of attachment, where at the time the mortgagee asserted his claim by intervention in the attachment suit, practically all other property of the debtor had been disposed of through no fraud of such claimants.

*Appeal from Winnesheik District Court.*—HON. L. E. FEL-
LOWS, Judge.

FRIDAY, DECEMBER 15, 1905.

IN an action brought by plaintiff against defendants to
recover the rent for certain premises, a landlord's attachment
issued which was levied upon a printing press used by the
defendants upon the leased property.  In this proceeding
various parties who had performed labor for the defendants
filed claims asserting a preference to the proceeds of the at-
tached property.  Van Allens & Boughton, who, it seems,
sold the press to the defendants, intervened, claiming a mort-
gage upon the attached property which they asserted was
superior to all other claims against it.  Both plaintiff and
the labor claimants filed demurrers to the interveners' peti-
tion as amended, and their demurrers were sustained.  Plain-
tiff took judgment for his rent, and a special execution was
ordered for the sale of the attached property.  The labor
claims were also allowed, and were ordered first paid.  From
the ruling on the labor claimants' demurrer, and from that
alone, interveners appeal.— *Affirmed.*

*M. A. Harmon* and *George W. Adams,* for appellant.

*E. W. Cutting,* for the labor claimants, appellees.

DEEMER, J.— The record is confused and complicated,
and we shall have some difficulty in stating the case so that
it may be thoroughly understood.  Plaintiff's action was to
recover rent from defendants, upon a lease made by him or-
iginally with the Standard Printing Company, and which it
is claimed the Decorah Printing Company, in March of the
year 1902, assumed and agreed to perform.  A landlord's
attachment issued which was levied upon a printing press,
which interveners had theretofore sold or contracted to sell
to the Standard Printing Company.  The action was com-

menced May 7, 1903. Thereafter, and between May 8 and December 14, 1903, various labor claimants, eleven in all, filed as many claims for labor performed for the Decorah Printing Company, within 90 days previous to the levy of the attachment. On November 28th, of the same year, Van Allens and Boughton, who had theretofore intervened in the attachment proceedings, filed objections to these labor claims, on the ground that all but one had been paid. Thereafter, and on the 3d day of February, 1904, it filed what it denominated its " second amended and substituted petition of intervention," in which it claimed a superior right to the attached property over all other claimants thereto. To this the labor claimants filed demurrers, which were submitted to the court, and finally sustained on February 5, 1904. Intervener elected to stand on its petitions, and judgments were rendered establishing the labor claims, and declaring them superior to intervener's lien. The appeal is from these rulings.

It appears from an amended abstract filed by the labor claimants, that plaintiff demurred to the original petition of intervention, and that this demurrer was sustained November 27, 1903. While intervener excepted to this ruling, it does not appeal therefrom, and, as a result, judgment was entered for the amount of the rent, and a special execution was ordered for the sale of the attached property. On the next day one of the labor claimants proved up his claim, and on November 30, 1903, and February 2, 1904, the other labor claimants proved their claims. The question of priority was determined by the order of February 5th, to which we have just referred, that gave the labor claimants priority over intervener to the attached property. As the appeal is from the ruling on the labor claimants' demurrer, all other issues, save those between intervener and the labor claimants, are eliminated, and we must treat the case as one where a landlord's attachment upon a printing press has been sustained, and the property ordered sold upon a judgment for rent, the landlord's lien being superior in point of time and

right to the claim and lien held by intervener.  We must also
treat the labor claims as having been established, for the
court has fixed the amount of these, and no appeal has been
taken therefrom.  Reduced to its last analysis, the question
is, which is prior in right to the proceeds of the sale of the
attached property, intervener or the labor claimants?  The
issue having been settled by demurrer in the trial court, all
relevant and material facts pleaded by intervener, affecting
the rights of the labor claimants, must be treated as true;
for they are admitted by the demurrers.  But allegations af-
fecting plaintiff in the attachment suit alone, are not rele-
vant here, for as to plaintiff there is no appeal.

Going to intervener's petition, we find that it alleges
the following facts, which are the only ones that by any pos-
sibility may be deemed relevant to our present inquiry:  In-
tervener's claim is really upon a mortgage given by the De-
corah Printing Company, for the purchase price of the print-
ing press, which was taken upon the leased premises.  By
the terms of this mortgage something like $2,900 is due to
intervener from the mortgagor.  On April 23, 1903, the De-
corah Printing Company gave out a written notice that it
would suspend business on May 1st, of that year.  It did
suspend on that day, and plaintiff's attachment was levied
on May 7th.  At the time the printing company suspended,
it had property to the amount of $10,000 or $12,000, upon
which plaintiff held a lien for rent.  Plaintiff fraudulently,
in so far as the intervener is concerned, allowed all this prop-
erty, save the printing press, to be removed from the state of
Iowa, and to be sold and the proceeds thereof taken by the
plaintiff or his attorney.  This sale is said to have been made
on July 28, 1903.  It is also said that the labor claimants
are not entitled to preference because the printing company
voluntarily suspended business on May 1st, and that its busi-
ness was not closed by reason of the landlord's attachment,
but that the unattached property of the printing company
was removed to Illinois, and there sold.  These are all the

material allegations of intervener's pleading, although much more is stated, which has reference solely to the plaintiff's claim for rent.

The demurrers filed by the labor claimants are bottomed upon the thought, that as the property of the printing company had been taken under an attachment, and as their claims had all been allowed by the district court, as being for debts owing for labor performed within 90 days next preceding the seizure of the property, their claims were each and all superior to that of intervener, and it, intervener, was not entitled to the relief it demanded, to wit, priority of its mortgage over the labor claims. Section 4019 of the Code provides that " when the property of a corporation, company, firm or person shall be seized by any process of any court . . . the debts owing to employés for labor performed within ninety days next preceding the seizure of such property, shall be a preferred debt and paid in full," or, in substance, if there be not sufficient realized from the property to pay in full, then ratably after the costs are paid. By the next section, it is provided in substance that such employés may file statements of their claims in court at any time after seizure of the property and before sale thereof is ordered. Section 4021 provides for a contest of such claims, and section 4022 provides that the claims of employés for labor shall have priority over all liens upon the property attached.

In view of these statutes, the sole question, as we understand it, is, have labor claimants any preference or are they entitled to advantage themselves of the statutes quoted, in the absence of a showing that practically all of the property of the company or corporation has been taken by attachment, and its business suspended by reason thereof? And if this be the rule, what should be the result under the peculiar facts of this case? Contrary to intervener's contention, the labor claimants are not charged with fraud, even inferentially; but reliance is placed upon the fact that the business of the

printing company was not suspended by reason of the attachment, and upon the further fact, that when its business was voluntarily suspended, and when the attachment was levied, it had other property amounting to something like $10,000, title to which and the proceeds thereof were fraudulently acquired by plaintiff and his attorney. We have then primarily a question of statutory construction, to wit, what is meant by the phrase, " When the property of any company, etc., shall be seized by any process of any court, etc ? " Does it mean all the property, or substantially all of it, or does the section apply whenever any property of such corporation or company is seized under process. The property here was seized under a process of court, to wit, a landlord's attachment.

At the time of the levy the defendant in attachment, the lessee of the property, had other property amounting to $10,000 or $12,000 upon which the landlord had a lien, but this was not seized under the attachment. It was sold, however, after most of the labor claimants' statements were filed, and before the intervener made any objection to the claims, and, as we understand it, before it intervened in the case. According to the record the remaining property of the printing company was sold on July 28, 1903, and the petition of intervention was not filed until September 21st, of the same year. The printing company had suspended business on May 1st, voluntarily, it is true, and not because of the attachment. But it had discharged its men and had ceased operations. Fraud is alleged in the sale of the property not levied upon, but there are no allegations in intervener's petition connecting the labor claimants with this fraud. So that, when intervener came into the case, defendants had no other property than the printing press, which was subject to attachment. The business of the two printing companies had been suspended, and there was no other property aside from the printing press, to which the labor claimants might look for the payment of their claims. Moreover, when intervener

filed its petition of intervention upon which it now stands, the labor claims had all been allowed, the business of the defendants had been suspended, and they had no other property than the printing press, which was subject to levy.

Remembering, that so far as the labor claimants are concerned, all fraud allegations are out of the case, we are brought back again to the interpretation of section 4019 of the Code to determine its applicability to the facts above recited. Does the statute require that all the property of the debtor be seized before labor claimants may have the preference given them by statute? The law does not so require, unless we hold that the words, "the property," mean all the property of the debtor. The affirmative of this proposition is strongly insisted upon by intervener, and it claims that we have so decided. The definite article "the" has sometimes been construed to mean "all of the." *Born v. Home Ins. Co.,* 110 Iowa, 383. See, however, *State v. Mateer,* 94 Iowa, 42, where a somewhat different conclusion was reached. But, at most, it is nothing more than a definite adjective, as opposed to an indefinite article. Standard Dictionary. And there seem to be no settled rules for its construction. Much must of necessity be left to the context, and to the objects and purposes of the statute in which it is found.

Going, first, to our previous decisions to see if we have anything in point, we find that some of them were based upon a statute passed by the Twenty-Third General Assembly, known as chapter 48 Laws 1890, the material part of which (section 1) reads as follows: "When the property of any company or corporation . . . shall be seized upon by any process of any court; or when their business shall be suspended by the actions of creditors, or be put in the hands of a receiver, etc., then and in all such cases, the debts owing to laborers or servants . . . for work or labor performed within ninety days, etc., . . . shall be treated as preferred debts, and shall be first paid in full." In *Rey-*

*nolds v. Black,* 91 Iowa, 1, the property. of the debtor was taken under a chattel mortgage, which operated to suspend its business. In that case we said, in commenting upon the statute just quoted: "It will be observed, that it is only when the property of a debtor is seized, his business suspended by action of his creditors, or transferred to a receiver, that this statute becomes operative." The object of the statute was declared to be the protection of employés, who held small claims, who by reason of their confidence in their employers are the last to demand security, or to proceed against him. It was also declared to be for the protection of wage workers, who usually contribute to the creation, enhancement, or preservation of the assets from which the debts are to be paid. It was also said that the preference was given over existing liens, and not to what was left after satisfying these liens.

Again we quote: "It is only when the assets have been seized, his business suspended by the action of creditors, or transferred to a receiver, that the statute applies." But it was also said: "An officer seizes the assets of the debtor on an execution or attachment, and thereby the creditor obtains a lien, yet, thereafter, the laborer may present his claim, and be entitled to preference." It will be noticed that the property was not taken under an attachment in this case, or put in the hands of a receiver, and it was necessary for the labor claimants to show that the debtor's business had been suspended by action of his creditors. In *Goodenow v. Foster,* 108 Iowa, 508, the property was also taken under a chattel mortgage, and following the Reynolds Case, the laborers were given a preferred claim, it being alleged and undenied that the debtor's business had been suspended by the seizure of the threshing machine under the mortgage. That case holds that labor claimants are entitled to preference although their work did not go to the betterment of the property. In *St. Paul Co. v. Diagonal Co.,* 95 Iowa, 551, the property of the debtor was first seized under an attachment. Labor claim-

ants filed statements, and thereafter the attachment was abandoned, and a receiver was appointed for the attachment defendant. The labor claimants were adjudged to have a preference over all claims and liens save fees of the receiver, and his attorney and the costs of the proceedings. In *Wells v. Kelly*, 121 Iowa, 577, property was taken under a chattel mortgage, and the case was decided under the statute as it now reads. In that case it was held that laborers were not entitled to preferential payment for the reason that the property was not taken under process of court, and was not held by a trustee, assignee, etc. The change made by the Code of 1897 is noticed, and it is said in so many words that as the language, " or when their business shall be suspended by the action of creditors," is omitted from section 4019 of the Code, it was manifest that this latter section did not apply to cases where property was taken by an agent under the stipulations of a chattel mortgage, although the business of the debtor was suspended thereby. In *Haw v. Burch*, 110 Iowa, 234, the property of a debtor was attached and thereafter placed in the hands of a receiver. Labor claimants were given a preference over all others. Nothing was decided in that case material to our inquiry here, for not only was the property of the debtor in the hands of a receiver, but all of it had therefore been taken under attachment.

In *Stuart v. Twining*, 112 Iowa, 154, we have the case nearest in point. There a landlord had sued out an attachment against his tenant, and had levied upon the growing crops. It did not appear whether the tenant had other property or not, but labor claimants were held entitled to a preference under the statute now in force. In that case it is said: " The Legislature has in plain and unambiguous language made the claims for labor superior to the landlord's lien; " and finally it is suggested in the opinion, that these statutes should receive a fair and liberal interpretation. The small amount due laborers and their financial inability to protect themselves by suit were given controlling importance.

We have thus reviewed all our former cases, which shed any light upon the proposition now before us, and find that none of them sustain intervener's contention as to the proper construction of the statute.   Indeed, they negative one of its claims, to wit, that the business must be suspended by the action of creditors.   Moreover, we have in this review, discovered the objects and purposes of the law, and found that it should be fairly, even liberally construed, in order to effectuate its purpose.

There is much ground for saying that the Legislature meant in using the terms it did, to give employés a preference only when all or practically all of the property of the debtor is seized under attachment or execution, for the reason that the debtor may still continue his business and pay his employés, without their resorting to the remedy given by the statutes quoted.   But in the Stuart-Twining Case, *supra,* this construction was not given, nor was the thought suggested in the opinion.   It is the only case where property was seized under attachment, and while it does not appear that the debtor had no other property, it is manifest that all of it was not taken, and that the case was decided without reference to that fact.   But whether this be so or not, and conceding arguendo, that the statute should be read as if it said all the property of the company or corporation, and this we do not now decide, still it appears in this case that when intervener came into it, the printing company had suspended business, and that all its property had been disposed of, except that taken under the landlord's attachment.   Intervener had stood by without taking any steps to protect its interests, from May 7th until after the printing company had disposed of all of its property save the press, and then came into the litigation at a time when the attachment covered all the remaining property belonging to defendants. True, it says now that the unattached property was fraudulently disposed of, but there is no claim that the labor claimants had anything to do with this; and as plaintiff obtained

judgment for the full amount of his rent, and had an order for a special execution for the sale of the attached property, from which the intervener did not appeal, the case stood, when intervener came into it, as if all defendants' property had been seized under the landlord's attachment.

It is in no position to say that the labor claimants should have brought independent actions to collect the amount due them by attachment or otherwise; for this would thwart the very objects and purposes of the statute. Their claims are all small, none of them exceeding $40, and we may well assume that they did not have the means to enforce their claims by suit. Intervener had a large claim, and it could have subjected the property other than the printing press to the satisfaction of its claim. It did not do so, but yet insists that the laborers have no standing in court. Plaintiff is not complaining of the order giving labor claimants priority over its attachment, nor is intervener complaining because plaintiff was given his judgment and an order for a special execution. Coming into the case by way of intervention, intervener must take it as he finds it. At that time there is no doubt that all of the property of the defendants was held under the attachment. In these circumstances we think the trial court was right in sustaining the demurrers of the labor claimants. But we do not at this time feel called upon to decide whether or not all or practically all the property of a debtor must be taken under process before labor claimants may be preferred. Our present view of the statute in the light of the facts before us subserves the liberal objects and purposes thereof, and preserves to labor claimants the rights which the Legislature intended to confer upon and vest in them.

Intervener further contends that the labor claimants were parties to the alleged fraud, but, as we have already said, this is not borne out by the record. There is no statement of that kind in the petition by inference or otherwise. Again it says, it never sold the property to the printing com-

panies, and that title thereto always remained in it. But the record does not support it in this. True, the originial contract was of conditional sale only, but this was merged into an actual sale, by the taking of notes, secured by mortgage upon the property, and in the petition it asks that this mortgage be held superior to any of the labor claims. This ought to be conclusive on this proposition. The case is peculiar in its pleadings and in its facts; but giving to the language of the statute that liberal interpretation which we should, we think the trial court was right in postponing intervener's mortgage to the payment of the labor claims. Appellees filed an argument which they called " an answer to appellant's reply." There is no authority for such a document, and appellant's motion to strike it, and to tax the costs thereof to appellees, is sustained.

No error appears, and the judgment must be, and it is, *affirmed.*