Des Moines Packing Company, Appellee, v. Chas. Uncaphor, Defendant, G. F. Dyson, Garnishee, Appellant.

SALES: Bulk Sales Act—Bona Fide Sales—Failure to Give Statutory Notice—Effect. The Bulk Sales Act (Sec. 2911-a to 2911-c, Code Sup., 1913) does not prevent creditors from taking, in good faith, security for their claims. A sale or transfer *not fraudulent in fact* of all the property employed in a retail business, under an agreement that the vendee will sell the property, will apply the proceeds on the amount owed to the vendee by the vendor, and will pay any balance to the vendor, *is not rendered fraudulent in law* by the failure of the vendor to give to his creditors the three days' notice of his intention to sell, as provided by said act.

*Appeal from Boone District Court.*—R. M. Wright, Judge.

Thursday, February 10, 1916.

This is a garnishment proceeding. In the main action, the appellee obtained judgment by default against Chas. Uncaphor. Plaintiff caused a writ of attachment to issue, and appellant, G. F. Dyson, was garnished thereunder as a supposed debtor of the said Uncaphor. The plaintiff claims that Dyson, the garnishee, is liable because of the sale by Uncaphor, the principal defendant, to Dyson of a stock of goods without giving notice to his creditors, as provided in Chapter 150, Acts of the Thirty-fourth General Assembly, now Sections 2911-a to 2911-c, Code Sup., 1913. The trial court held that the transfer was invalid, and, the value of the stock being larger

than plaintiff's judgment, the court rendered judgment against the garnishee for the full amount of plaintiff's claim against Uncaphor. The garnishee appeals.—*Reversed.*

*D. G. Baker,* for appellant.

*Whitaker & Snell,* for appellee.

PRESTON, J.—There is no dispute in the facts. On and prior to November 22, 1912, the garnishee, Dyson, was running a grocery business by himself at Boone, Iowa, and the principal defendant, Uncaphor, was running a retail butcher business by himself in the same room. The answer of the garnishee is that, on that date, he claims to have bought Uncaphor out, under an agreement that appellant was to have enough out of the business to pay Uncaphor's debt to him, and Uncaphor was to have the rest. Dyson had stood good to two packing houses for Uncaphor's bills. Uncaphor's bills were due weekly, but he had been selling his merchandise on a monthly credit to his customers, and had run short of money to pay his bills, and Dyson lent Uncaphor the money and stood good for him at two packing houses. Uncaphor and Dyson entered into an agreement that Dyson was to take appellant's stock and sell it out and apply it on the indebtedness which Uncaphor owed Dyson, and the balance was to be turned over for the benefit of Uncaphor. The stock invoiced $170 and the tools and fixtures, about $185, for which amounts Dyson gave Uncaphor credit. The stock was worth the amount allowed, but he allowed Uncaphor the cost price of the tools and fixtures, which Dyson thinks was somewhat more than their actual cash value. Uncaphor's accounts were also turned over to Dyson and he has collected a part of them, but all the money Dyson has received is not sufficient, by about $50, to pay Uncaphor's debt to Dyson. Dyson paid to five of Uncaphor's creditors $125.77, for which he had stood good for Uncaphor because he had to sign security blanks to these parties for him. The assets of Uncaphor consisted of the property before enumer-

SALES: Bulk Sales Act: *bona fide* sales: failure to give statutory notice: effect.

ated. Dyson never at any time paid any money to Uncaphor. No notice was given, as required by the act of the Thirty-fourth General Assembly before referred to. The trial court held that, because of the failure to give notice, the transaction was invalid.

The statute before referred to provides:

"No person, firm, or corporation engaged in the retail or wholesale business of buying and selling merchandise for profit shall at a single transaction, and not in the regular course of business, sell, assign, or deliver the whole, or a major part of his stock in trade unless he shall, not less than three days previous to such sale, assignment, or delivery, send or cause to be sent to his creditors by registered mail, a notice of his intention to make such transfer, assignment or delivery, which notice shall be in writing describing in general terms the property to be sold, assigned, or delivered, and the parties thereto.

"All such sales, assignments, or deliveries of commodities which shall be made without the formalities required by the provisions of section one hereof, will be presumed to be fraudulent and void as against all persons who were creditors of the vendor at the time of such transaction."

The act further provides in Section 3, in substance, that transfers under this act shall include sales, exchanges and assignments, but that nothing in the act shall apply to the transfers by or to executors, etc. The act does not in terms read that such sales or transfers are in fact void, or that they are conclusively presumed to be so.

It is the contention of appellant that the presumption referred to in the act has no other effect than to shift the burden of proof upon the party desiring that the sale shall be held valid, instead of requiring the litigant attacking said sale to show that the sale was fraudulent.

There is no claim by plaintiff that the transaction with Uncaphor was not in good faith, or that it was fraudulent, except that the statutory notice was not given; and we are of

opinion that, from the evidence, it could not be justly claimed that in fact the transaction was not in good faith.

The appellee seems to concede in argument that appellant's proposition as to the presumption referred to in the statute is correct; for they say:

"The contention of appellant, and thoroughly approved by us, is that the statute establishes a legal presumption that a sale or transfer of property without complying with the requirements of the previous section of that law is fraudulent and void. The burden of proof was, therefore, clearly upon appellant Dyson to show that such transfer was not fraudulent. . . . The trial judge, after due consideration of the facts and the law as presented, held that the presumption was not overcome. There is no showing whatever in the record produced that the trial judge held, by ruling or by inference, that, the law as above referred to made such sales void *per se*. We must, therefore, conclude that the trial judge was fully advised as to the nature of the law and simply was not persuaded that the evidence submitted was sufficient to overcome the legal presumption."

No authorities are cited by appellee on the question of presumption; so that, without determining the point, we shall so consider it for the purposes of this case.

Appellant contends that Uncaphor had a right to prefer appellant as one of his creditors and pay him in full the amount to which he was indebted to him, including the amounts for which he had stood good to other creditors of Uncaphor, and for such purpose to transfer his personal property in bulk, and cites 20 Cyc., 572; and that appellant, when he secured such preference, violated no rule of law, although others may thereby have been deprived of all means of obtaining satisfaction of their equally meritorious claims, citing 20 Cyc. 576; that Uncaphor had the right to dispose of the property in question, if done in good faith, for the payment of one of his creditors, although other creditors may have been defeated in the enforcement of their claims, citing

*Flood v. Bollmeier,* a case which, on the original submission, was affirmed (Dec. 13, 1912), but which, on rehearing, was reversed. See 165 Iowa 88. Though this case was decided by this court after Chapter 150, Acts of the Thirty-fourth General Assembly, took effect, the case did not arise under such statute. The defendant cites also *Curie v. Wright,* 140 Iowa 651, to the proposition that appellant had the legal right to purchase said property, although he knew that the appellee, Uncaphor, was in financial difficulty.

The record does not show that the trial court planted its ruling on the theory that the alleged transfer from Uncaphor to Dyson was fraudulent because the statutory notice was not given, and, from appellee's position in argument, as before stated, it seems not to claim that such was the reason for the court's so holding. Yet it seems to us that such must have been the ground upon which the court based its finding; for, as we have said, the evidence shows no actual fraud or bad faith. It is said in argument that there has been legislation regarding sales in bulk in many of the states in recent years. No decisions from other states are cited by either side. Upon an independent investigation, we find that there are not many cases, and what there are, are not in harmony on some of the questions. Some of them will be cited, not because all of them are in point, but as showing the tendency of the courts in regard to bulk sales. Of course, the statutes under which the decisions are rendered are not precisely like our own.

In *Humphrey v. Coquillard Wagon Works,* (Okla.) 49 L. R. A. (N. S.), 600, it was held, under the Oklahoma statute in regard to bulk sales, that, where the owner of a retail store, being insolvent, made an agreement with its larger creditors, except defendant, whereby a stock of hardware was transferred to one of the garnishees as assignee or trustee, who, by agreement of the parties, was to sell the stock and divide the proceeds pro rata among the creditors of the hardware company, it was not a voluntary assignment for

the benefit of creditors under the Oklahoma statute, but that the transaction was fraudulent and void under the bulk sales law of that state.

In *Williams v. Fourth National Bank*, (Okla.) 2 L. R. A. (N. S.) 334, it was held that, where the evidence to support an attachment sued out on the ground of a fraudulent conveyance or disposition of a debtor's property shows a sale in bulk of a stock of goods levied upon, but the court found that such sale was in fact made in good faith and without actual fraud, such finding overthrows the statutory presumption of fraud, and in such case, the attachment could not be justified and should be dissolved.

In *McCormick v. Kistler*, 45 L. R. A. (N. S.) 497, the Supreme Court of Michigan held that the Bulk Sales Law does not apply to sales of property which is exempt by law from execution. In the instant case, a part of the property turned over by Uncaphor to Dyson was his tools, so it may be that, as to such property, the statute would not in any event apply. But this question has not been raised and is, therefore, not determined.

In *Hannah & Hogg v. Richter Brewing Co.*, 12 L. R. A. (N. S.) 178, the Michigan court held that a chattel mortgage is not within the meaning of a statute forbidding the sale, transfer or assignment of a stock of goods in bulk without certain preliminary proceedings.

In *Dill v. Ebey*, (Okla.) 46 L. R. A. (N. S.) 440, it was likewise held that a chattel mortgage covering a stock of merchandise, where the mortgagor remains in possession and has the usual rights of redemption, creates a lien only, does not pass title, is not a sale, exchange or assignment within the meaning of the Oklahoma Bulk Sales Law, and is, therefore, not within the inhibition of said statute.

Under our own decisions, the mortgagee is the owner of property covered by the mortgage and entitled to possession, in the absence of stipulations to the contrary; but a provision

by which the mortgagor has the right of possession for a definite time is not fraudulent as to creditors, nor does it give the mortgagor such interest in the property that it may be levied on under execution against him. *Gilmore v. Kilpatrick,* 101 Iowa 164; *Warder-Bushnell, etc., Co. v. Harris,* 81 Iowa 153.

A chattel mortgage of property, the possession of which remains in the mortgagor, does not transfer an absolute and unqualified ownership, but is only a security for debt, and the ownership remains in the mortgagor. *Hollingsworth v. Holbrook,* 80 Iowa 151; *Taylor v. Merchants & Bankers' Ins. Co.,* 83 Iowa 402; *Hubbard v. Hartford Ins. Co.,* 33 Iowa 325.

In *Gallus v. Elmer,* 193 Mass. 106, cited in a note to 12 L. R. A. (N. S.) 174, it was held, under the Massachusetts statute, that where the vendee of a stock of goods, being unable to pay the balance due on the purchase price of the same, transferred the stock to the vendor in satisfaction of the balance due, the transfer was void as to other creditors, under a statute providing that a sale in bulk, etc., shall be fraudulent and void as against the seller's creditors, unless certain conditions are complied with. But it will be observed that the Massachusetts statute seems to be broader than the Iowa statute. The same conclusion was reached under the Georgia statute in *Sampson v. Brandon Grocery Co.,* 127 Ga. 454, also cited in the note to 12 L. R. A., before referred to.

A contrary conclusion was reached in *Peterson v. Doak,* 43 Wash. 251, where it was held that a debtor had the right to turn over to a creditor having no lien, in payment of a just debt, his entire stock of goods, where its value is not in excess of the debt to the payment of which it is applied. It was there held that such a transfer was not a sale within the terms and meaning of a statute regulating sales of stocks in trade in bulk. It was further held in that case that, aside from that proposition, under the findings of the court, it was unquestioned that the person transferring the property was

a debtor, and that if the amount of goods which he turned over was less in value than the amount of his indebtedness to the creditor, the transfer was justified.

In *Compton v. Dietlein*, (La.) 12 L. R. A. (N. S.) 174, it was held that a husband might transfer his stock of goods in bulk to his wife in satisfaction of his debt to her; but this was upon the theory that, under the law of Louisiana, she had a lien upon all her husband's property which would take priority over the claims of general creditors.

As stated, the record in this case does not show any fraud in fact. Uncaphor's debt to Dyson was a just claim and was in an amount larger than the value of the property transferred in satisfaction thereof. True, Dyson had no lien upon the property; but, under the authorities, we think it is quite clear that Uncaphor would have had the right to execute a chattel mortgage on the property to secure Dyson for the debt, and Dyson could at once, under a chattel mortgage, take possession of the property and foreclose the mortgage. This being true, we think Uncaphor had the right to transfer, in good faith, the property to Dyson, in satisfaction of the debt.

We are of opinion that it was not the intention of the legislature, in passing the act in question, to prevent creditors from securing their claims. It follows, then, that the learned trial court erred in holding that the transfer was fraudulent. —*Reversed*.

EVANS, C. J., DEEMER and WEAVER, JJ., concur.