GEORGE C. GORMAN, Trustee, Appellee, v. HENRY HELLBERG, Appellant.

SALES: Bulk Sales Act—Applicability. The Bulk Sales Act (37 G. A., Ch. 64 [1917]) applies to sales to *volunteer* purchasers, and not to purchases by *creditors.* A creditor may, in good faith, and without complying with the act, take from his debtor a transfer of the debtor's *entire* stock of goods in payment of the debt.

*Appeal from Jones District Court.*—MILO P. SMITH, Judge.

JANUARY 12, 1921.

ACTION by the plaintiff, as trustee in bankruptcy, to recover the possession or the value of a certain stock of goods sold by the bankrupt to the defendant. There was a directed verdict for the plaintiff, and the defendant appeals.—*Reversed.*

*C. J. Cash* and *B. E. Rhinehart,* for appellant.

*George C. Gorman* and *Remley & Remley,* for appellee.

EVANS, C. J.—Under the allegations of the petition, the right of recovery is predicated upon two grounds:

(1) That the defendant purchased the entire stock of goods of the bankrupt debtor in violation of the Bulk Sales statute, Chapter 64, Acts of the Thirty-seventh General Assembly.

(2) That the purchase was made within four months prior to the adjudication of bankruptcy, and that it was void, as a preference, under the Federal bankruptcy law.

The verdict was directed on the first ground. Clearly, the evidence would not sustain a directed verdict on the second ground. We have need to deal, therefore, only with the first

ground. The question presented involves the construction of the present Bulk Sales statute. This statute provides, broadly, that a sale of his stock in bulk by a retail dealer, without compliance with certain specified conditions, "shall be void, as against the creditors of the seller," etc. Our former statute provided that such a sale should be "presumptively fraudulent."

The retail dealer in this case was Angus. The plaintiff is his trustee in bankruptcy. Angus had operated a butcher shop in Anamosa for a period of ten months prior to the sale under attack. He rented his building from the defendant Hellberg. His capital was limited. His son and son-in-law started with him in the business. Hellberg signed a note with him for $500 for money borrowed for use in the business. On July 21, 1917, Angus advised Hellberg that he wanted to quit business, and proposed to sell Hellberg his stock for the purpose of paying his indebtedness to Hellberg, which consisted of $83 of rent due and the contingent liability of Hellberg as surety on the $500 note. The stock was taken by Hellberg at actual invoice price, with the agreement that the purchase price should be applied upon the indebtedness mentioned, and that the balance of the purchase price, if any, should be paid to the seller. The invoice totaled $611. There was nothing in the circumstances surrounding the parties which could be said to charge Hellberg with notice of the insolvency of Angus. His reasons for wanting to quit business were plausible and substantial. His son-in-law had not remained in the business but a very brief time. In March preceding, his wife had died. Shortly before the sale, his son had enlisted in the army. Shortly prior to the sale, he had received $1,500 of life insurance, because of the death of his wife. Hellberg knew that fact. These are the circumstances which negative any cause of belief on the part of Hellberg that he was obtaining preference from an insolvent. The question now is whether, under the facts here stated, the transfer of such stock was a violation of our own Bulk Sales statute.

In *Des Moines Packing Co. v. Uncaphor*, 174 Iowa 39, we held that the then existing Bulk Sales statute did not operate to prevent a *creditor* from taking a transfer of stock from his debtor in payment of his debt. So far as that feature of the law is concerned, there is no distinction observable between the

former statute and the present one. The Bulk Sales Act is a creditor's statute. It is framed wholly for the benefit of creditors. A sale of his stock in bulk by the dealer is void, not absolutely, but only "as against creditors of the seller." The very purpose of it is to give the creditor an undiminished right of appropriation of the stock, by legal process or otherwise, for the payment of his debt. The authorities quite uniformly hold that such a statute does not forbid the debtor to give to his creditor a lien or mortgage upon his stock to secure his debt. The authorities are collated in the *Uncaphor* case, and we will not repeat their citation here. Hellberg was a creditor. His right was equal to that of any other creditor. So far as this statute is concerned, he could have levied execution or attachment on the stock, or could have accepted a chattel mortgage thereon. If he had a right to take a chattel mortgage, he had a right to enforce it. Why should not the dealer be permitted to do voluntarily and without expense that which he could be compelled to do by legal process and wasteful expense? Hellberg was not only a creditor. He had a lien upon the stock for rent accrued and to accrue. His lien was a statutory lien, and he was entitled to enforce it by a statutory method. Why should the dealer be precluded from complying voluntarily with the obligations imposed upon him by the statutory lien? True, the amount of the lien was less than the value of the stock; but, if the construction contended for by appellee be sustained, he would be in no better position as a creditor and in no better position as a lien holder than would any volunteer purchaser. The statute must be construed either as applying universally to all purchasers, whether creditors or volunteers, or else it must be construed as applying to volunteers only. This is not saying that a creditor may not be found guilty of fraud in fact in a given case. Nor is it saying that he may not be deemed a volunteer as to any surplus coming into his hands over and above his debt. The debt involved herein was approximately $600, and the surplus was very slight. We reach the conclusion, therefore, that the sale to Hellberg was not void, under the Bulk Sales Act. The judgment below must, therefore, be—*Reversed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.