W. F. HEESSEL, Appellee, v. CRESTON NATIONAL BANK, Appellant.

MARCH 6, 1928.

*Higbee & McEniry*, for appellant.

*E. L. Carroll* and *D. W. Harper*, for appellee.

KINDIG, J.—Appellee, the plaintiff in the district court, owned a judgment amounting to $376.10 against F. E. Weaver and wife; and on April 14, 1925, general execution issued thereon, resulting in a levy by the sheriff on an international truck belonging to Weaver. Before this time, Mr. and Mrs. Weaver executed and delivered their promissory note, July 15, 1924, to appellant, payable in the sum of $635. To secure that negotiable instrument, the Weavers made a chattel mortgage, covering the truck above named. Record of this contract of security was duly filed in the recorder's office May 10, 1925. So, after the seizure of the motor vehicle by the officer under the writ, appellant caused to be served upon the "sheriff" notice of its qualified ownership of said chattel, and demand for the release thereof. Consequently, appellee furnished a bond in the penal sum of $1,000, to indemnify the last named county official against loss, and he retained the personalty.

Afterwards, on April 30th, appellee filed in the same cause "verified proof of his preferred labor claim," alleging, among other things, that $100 of said "judgment" was due him as wages for services performed for Weaver within the last 90 days next preceding the "seizure" of the incumbered "truck." Finally, on May 9th, appellee filed in the court below a verified petition in equity, embracing all the facts herein previously re-

cited, ending with a prayer for the establishment of the "labor claim," prior and superior to appellant's rights under its "chattel mortgage." Responding to this, appellant filed its answer and cross-petition, contending the seniority of its "lien" and denying the existence of the essential prerequisites for the redress under the "labor claim," because the "truck" was not "seized on any process of court or by the action of any creditor, nor placed in the hands of a trustee, receiver, or assignee," and finally demanding damages for the alleged conversion.

This contest resulted in favor of appellee, and he was allowed preferences as asked, for $100. Hence, "execution sale" was had, whereat appellee purchased the subject of the controversy for $100 and costs.

To correct alleged error, the appeal was taken.

I. Parenthetically, it is noted that Section 11717 of the Code of 1924 permits the predominance of a "labor claim" over and above the rights of a recorded or unrecorded chattel mortgage when the specifications and conditions of the legislation have been met. *Reynolds v. Black*, 91 Iowa 1; *Goodenow v. Foster*, 108 Iowa 508; *Soodhalter v. Reliance Coal Co.*, 203 Iowa 688. See, also, Section 11721, 1924 Code.

II. The phraseology of that particular enactment is:

"11717. When the property of any company, corporation, firm, or person shall be seized upon by any process of any court, or placed in the hands of a receiver, trustee, or assignee, or their property shall be seized by the action of creditors, for the purpose of paying or securing the payment of the debts of such company, corporation, firm, or person, the debts owing to employees for labor performed within the ninety days next preceding the seizure or transfer of such property, to an amount not exceeding one hundred dollars to each person, shall be a preferred debt and paid in full, or if there is not sufficient realized from such property to pay the same in full, then, after the payment of costs, ratably out of the fund remaining."

Involved in this litigation is the attempted "seizure" of Weaver's property by an execution, for the purpose of paying the obligations due a "laborer." Application is thereby made by Weaver's employee for compensation earned through the performance of labor "within the 90 days next preceding the seizure." That much is admitted by appellant; but it insists

there is no "seizure," as contemplated by the lawmakers, and for precedent on this point relies upon *Majestic Co. v. Davis, Co.*, 170 Iowa 5. Distinguishment is immediately apparent between the suggested authority and the case at bar. In the *Majestic Co.* case, the property was released directly by the sheriff for failure to furnish an indemnity bond after notice of ownership. In other words, there was no property remaining in the possession of that levying officer; for, in the cited case, surrender of the chattels was made before the "labor claims" were asserted. No relinquishment was made in the controversy before us, and the "bond" was tendered, thus enabling the sheriff to retain the custody.

III. Definition of "seizure," as employed in the Code paragraph above quoted, includes the taking under execution. *Lambert v. Powers*, 36 Iowa 18, furnishes the following general statement:

"Execution is process authorizing the seizure and appropriation of the property of a defendant for the satisfaction of a judgment against him."

Likewise, in *Reynolds v. Black*, supra, this emphatic declaration concerning the specific relation was used:

"An officer seizes the assets of the debtor on an execution or attachment * * * ."

IV. "Execution" here was supported by a valid "judgment," and appellee, being the owner thereof, was authorized thereby to cause the "issuance of the writ." Armed with that document, the sheriff was fully justified in making a levy thereunder. There is presented for decision, therefore, the proposition as to whether or not such "levy" constitutes "seizure," under the statutory provision in question. Preliminary to the specific discussion, attention is directed to the fact that this sequestration was at the instance of the servant against his master,—not through the action of any other creditor. Had it not been for this movement on the part of the employee, the employer's chattels would not have been disturbed, but rather, they would have continued in the unmolested possession of the owner, to be utilized for the production of funds to pay the claim for wages.

Primarily, the object of the lawmakers' enactment was to protect the man who toils (because he has small means, and is

disinclined to institute adversary proceedings against his chief, the source of his income), against the advantages that might otherwise be gained by other creditors, through the methods and ways named therein. Such thought permeates all previous judicial consideration of this subject. *Reynolds v. Black*, supra, contains the following apt language:

"It is well known that, in cases of such failure [suspension of business by seizure], employees, because of the smallness of the amount usually due to them as wages, and their confidence in their employer, are the last to demand security or to proceed against him by legal processes. It is a matter of common observation that in such cases other creditors usually consume the assets, to the exclusion of the employees, whose dues, though small, are of great importance to them. The evident purpose of this statute is the better protection of the wage-working class of creditors. * * * This preference is grounded upon the broadest equity, for this class of creditors usually contributes to create, enhance, or preserve the assets from which the debts are to be paid."

See, also, *Anundsen v. Standard Printing Co.*, 129 Iowa 200; *Stuart v. Twining*, 112 Iowa 154.

Manifestly, it was not the purpose, nor is it within the purview, of the legislative act that the "laborer" is to instigate the proceeding which results in the "seizure;" for the law is to be used as a protection, not a sword. If appellee wished to avail himself of a general execution on his judgment, that was his privilege; but clearly, he could not, through that pretense, create a basis for the operation of his preference under this law. As a matter of fact, the attachment was illegal, or at least secondary to appellant's mortgage. Logically, then, an unsuccessful attempt at "seizure" by the appellee cannot avail him as a basis for the assertion of the prior claim for his wages when he finds that the "execution" must yield to the superior rights of appellant's mortgage. Otherwise, the legislation which was intended for a shield is, by manipulation, transformed so that it no longer remains as an instrument of protection, but becomes, through wielding, a weapon of attack and danger. These observations are suggested by *Reynolds v. Black*, supra, wherein we said:

"It is only when the assets have been seized, his business

[employer's] suspended by the action of creditors, or transferred to a receiver or trustee, that the statute applies. * * * An officer seizes the assets of the debtor on an execution or attachment, and thereby the creditor acquires a lien. Yet, thereafter, the laborer may present his claim to the officer, and in such case the statute expressly provides that the officer shall pay the laborer, after first paying costs, notwithstanding the pre-existing lien acquired by the execution or attachment."

Clearly, the thought is expressed that the "creditor" and the "laborer" are not one and the same, but different persons; forsooth, were this not true, there would be instances, if the argument of the appellee prevails, where the employee, as an attachment or execution creditor, would adversely encounter himself, as a laborer claimant for wages; and such result was not contemplated or intended. Appellant did not "seize" the subject of the controversy, nor did it attempt to foreclose its mortgage, but only in the first instance, gave notice of its claim, and then brought suit to recover damages for the conversion. We cannot read into the statute provisions it does not possess, nor can we widen the scope of those therein contained, beyond the apparent legislative intention. *Wells v. Kelley*, 121 Iowa 577.

Resultantly, appellee was not enabled, through his proceedings, to establish the "labor claim," for "seizure," as specifically meant, was not thereby accomplished, and, due to this situation, appellant is entitled to damages for the conversion of the property covered by its chattel mortgage.

Conflict exists in the evidence concerning the value of the truck at the time in question. However, the witnesses testifying for appellee were indeed very casual and perfunctory in their observations, inspections, and investigations; while Mr. Matt Conway, called by appellant, was experienced in the truck business, knew this particular vehicle, was conversant with the market, and was in a position to know. He said, after close and careful examination, the market value of the conveyance was $300; and this, we are constrained to hold, is true.

The judgment of the district court should be, and hereby is reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.