STATE OF IOWA, plaintiff, v. EAGLE PETROLEUM COMPANY, a corporation, et al., defendants; CAPITOL INDEMNITY CORPORATION, cross-petitioner, appellee; MARSHALL SMITH et al., cross-defendants, appellants.

No. 52518

(Reported in 153 N.W.2d 115)

September 19, 1967.

Ronald L. Saylor and Betty, Neuman, McMahon, Hellstrom & Bittner, of Davenport, for cross-defendants, appellants.

A. Fred Berger and A. Fred Berger, Jr., of Davenport, for cross-petitioner, appellee.

MASON, J.—This is an action for state motor fuel taxes due from Eagle Petroleum Company. Eagle had experienced financial difficulties and failed to pay the gasoline tax collected from its customers in December 1962 and January 1963. Capitol Indemnity Corporation, surety on Eagle Petroleum's bond guaranteeing payment of these taxes, was subrogated to the State's claim when it paid a default judgment entered in the State's favor against Eagle.

Capitol now seeks to recover the amount paid by it from Marshall Smith and Omni Corporation because of their failure to comply with the Iowa Bulk Sales Act in taking over the assets of the Eagle Petroleum Company. It is conceded there was no compliance with the provisions of this Act.

The trial court found it unnecessary to determine whether the transfer from Eagle to Smith and Omni was a sale within the provisions of the Bulk Sales Act and stated the issue to be determined was whether payments made from the property in question were entitled to a priority over the motor fuel tax lien.

It is undisputed that Eagle owed the State, including penalty and interest, $10,947.66 for motor vehicle tax under chapter 324, Code, 1962, $6490.02 for December and $4457.64 for January.

The court held only the taxes incurred in December were prior to all other claims and gave Capitol judgment for $6490.02 against Omni, denying its claim of priority for the January taxes.

Omni appeals and Capitol cross-appeals.

I. Eagle Petroleum, organized as an Iowa corporation March 13, 1961, commenced business in June. On April 24 Omni had entered into a conditional sales contract with Eagle and on the same day leased it five filling stations. Omni and Eagle also entered into a third written contract labeled "Agree-

ment" which incorporated the lease and conditional sales contract. Each of the instruments had been executed by Marshall Smith as president of Omni. None was recorded.

The conditional sales contract was for $13,446.50 and required payments by Eagle of $261 per month commencing June 1, 1961. The lease provided for a minimum monthly rental of $1375 plus a gallonage rental which applied when it exceeded this minimum. In addition, Eagle as lessee was to pay all utility bills and taxes which became a lien on the premises. As security for these obligations the lease established a contractual landlord's lien on all property placed on the premises for any and all sums due under the lease.

In June 1962 Eagle made application to Capitol for a surety bond to be posted with the State to secure payment of gasoline taxes collected. Capitol posted its bond.

Sometime late in 1962 or early 1963 Eagle's operation became unsuccessful. An attempt to sell the company failed. Because of Eagle's financial difficulties, Omni served notice on January 25 by certified mail terminating the lease and cancelling the conditional sales contract for failure to pay rent due January 20, 1963, and the installment due under the conditional sales agreement.

Pursuant to an agreement with Eagle Omni took possession of the stations January 28 and 29, including all merchandise, fixtures, equipment and assets of Eagle located on the various premises, cancelled the lease and assumed the operation. At the same time Omni also repossessed all equipment originally sold under the conditional sales contract, including all replacements.

On March 15, 1963, the state treasurer filed a lien for motor fuel taxes in the clerk's office of the Scott County district court certifying that Eagle Petroleum Company owed fuel taxes for December 1962 in the amount of $6490.02 and for January 1963 in the sum of $4457.64. Immediately thereafter the State filed suit against Eagle Petroleum and Capitol Indemnity, its surety, for collection of this tax.

As stated, there was no disputed issue between these parties and default judgment was obtained by the State for the amount claimed. When Capitol paid the judgment it received

an assignment of the State's judgment and was subrogated to the State's claim against Eagle. With court approval Capitol Indemnity Corporation filed a cross-petition against Marshall Smith and Omni Corporation.

II. The issues between Capitol and Marshall Smith were the status of Marshall Smith as nominee, the extent of his receipt or control of the assets of Eagle and the priority of interest between Capitol, assignee of the State and Marshall Smith.

The trial court found that Capitol Indemnity Corporation had no right to personal judgment against Marshall Smith and dismissed the action against him.

III. The issues between Capitol and Omni were the status and relationship between Omni and Eagle, the manner, character and method of transferring the assets from Eagle Petroleum to Omni, the legal effectiveness of the transaction and the priority resulting therefrom as between Omni and Capitol.

When Omni repossessed the equipment under the sales contract there was a balance due of $9440.23. Smith asserted that the value of the equipment at the time was less than $9400.

An inventory of Eagle's merchandise and assets was taken (not including the equipment repossessed under the sales contract) and an "Estimated-Guess" of Eagle's assets and liabilities was prepared February 5. However, it was later determined that one bank account listed was nonexistent, another account was garnished and only $941.25 was collected from the credit card receivables. Funds obtained by Smith from the credit card accounts were either garnished or attached by the Scott County sheriff for taxes due from Eagle: sales tax, $122.22; personal property tax, $693.83; and city personal property taxes, $125.20.

June 7 a final accounting between Eagle and Omni was completed without reference to the repossessed equipment. Otherwise this indicated that Smith or Omni received in inventory or moneys a total of $9375.87 which the court found to be the value of these assets.

There is no dispute as to how the proceeds from these assets were applied. Records of all payments made from the property were received in evidence.

Omni credited itself with $1061.48, the total amount paid to Eagle's employees under wage assignments; $1376.33 in payment of property taxes against the station properties; $1415.02 rental for all stations for December as computed by gallonage and the minimum; $1375 for January rent on all stations; $104.72 for delinquent water bills against the various stations; and $141.47 a credit card payment deposited in error to Eagle's account.

Omni asserted a lien priority with reference to the above items leaving a credit balance of $3901.94 which was paid to Eagle's attorneys. The attorneys made disbursements from these funds for nonresident income taxes, withholding and state and federal unemployment taxes totaling $2208.59. The attorneys also received a refund on insurance premiums. This amount plus the retained balance after the above disbursements amounted to $1873. The attorneys are asserting a lien in the amount of $519.01 against the funds in their hands.

As stated it is payment of the foregoing claims that presented the issue to be determined in the trial court.

In its appeal from the court's determination of that issue Omni asserts as propositions relied on for reversal (1) The Bulk Sales Act does not apply and does not void the transfer from Eagle to Omni, the remaining creditors may look to the surplus in the hands of Eagle's attorneys over Omni's debts, (2) In the alternative if the Act does apply, thereby voiding the transfer, the creditors and their claims are returned to the status quo, (3) The surplus over the sums retained by Omni, now in Eagle's hands, is subject to those creditors' claims who are entitled to priority over the fuel taxing and (4) Sums collected by Smith and garnished in his hands are prior to the fuel tax lien.

IV. In determining it unnecessary to decide whether the transfer from Eagle was a sale under the provisions of the Act the trial court reasoned that if the transaction were such sale, all Capitol would be entitled to is a right to be restored to the position it would have occupied if the provisions of the Act

had been complied with. This would necessitate a determination of priority of liens and the court would be confronted with the same problem whether the transfer was a sale or not.

In considering Omni's first and second propositions relied on, we examine the transaction as related to the repossession under the conditional sales contract. This presents the question whether repossession by the vendor upon vendee's default under such contract is to be considered a sale or transfer by the vendee-merchant within the purview of the Bulk Sales Act. Section 555.1, Code, 1962, provides in part: "The sale, transfer, or assignment, in bulk, of any part or the whole of a stock of merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade * * * shall be void as against the creditors of the seller, transferor, or assignor: * * *" unless certain conditions are met which the parties to this litigation admit were not complied with.

The only property which Eagle had in the equipment covered by the conditional sales contract was the right to acquire title thereto by performing the conditions provided for in the sales contract. Universal Credit Co. v. Mamminga, 214 Iowa 1135, 1138, 1139, 243 N.W. 513, 514. Omni had a contractual right upon Eagle's default in payment of the purchase price to repossess with or without legal process as provided in paragraph 9 of exhibit A, the conditional sales contract.

"The rule is quite generally recognized that under a conditional sale contract the seller, upon default in payment of the purchase price by the conditional buyer, has three well-defined remedies: (1) He may sue for and recover the purchase price; (2) recover possession of the property; or (3) foreclose the buyer's right in an equitable action. * * *." Short v. Martin, 255 Iowa 189, 194, 121 N.W.2d 154, 157, and citations. Omni elected to pursue the second remedy. Before Eagle performed the terms of said contract and acquired title to the equipment, Omni repossessed the same under the contract as it had a right to do. Eagle, by allowing repossession without a court contest, was only doing that which it was obligated to do under the contract and was not making a transfer or assignment as con-

templated by section 555.1, Code, 1962, by allowing Omni peaceful possession. The repossession by Omni under the conditional sales contract did not contravene the Act.

We next consider the possession acquired under the contractual lien given by the lease, exhibit B. Omni was given a lien in paragraph 11 to secure payment and performance of all obligations by the lessee to be performed under the lease on all property, including merchandise dealt in, which was or might thereafter be placed by the lessee on the demised premises. Paragraph 13 provided that in the event of default in any provisions thereof the lessor might at anytime terminate the same and take the property upon which the lien was given in paragraph 11.

A lease which in addition to the statutory lien makes the rent charge a lien upon the property of the tenant on the premises whether exempt from execution or not constitutes, in effect, a chattel mortgage or equitable lien. Beh v. Tilk, 222 Iowa 729, 731, 269 N.W. 751, 752, and citations.

When the lease was terminated Eagle owed rent as well as certain utility bills and taxes. It was indebted to Omni. Omni was not only a creditor it had a lien upon the stock for rent and performance by Eagle of other obligations under the lease. In an effort to collect this indebtedness Omni had the right to enforce its contractual lien as it would a chattel mortgage by an action in equity. It could have levied execution or attachment on the stock. Why should Eagle be precluded from complying voluntarily with the obligation imposed upon it by the contractual lien?

The Bulk Sales Act does not operate to prevent a creditor from taking a transfer of stock from his debtor in payment of a debt. Gorman v. Hellberg, 190 Iowa 728, 729, 180 N.W. 732, 733, citing Des Moines Packing Company v. Uncaphor, 174 Iowa 39, 156 N.W. 171. "This is not saying that a creditor may not be found guilty of fraud in fact in a given case. Nor is it saying that he may not be deemed a volunteer as to any surplus coming into his hands over and above his debt." Gorman v. Hellberg, supra, 190 Iowa at 730.

We agree with Omni's contention asserted in propositions

one and two that the Bulk Sales Act does not apply to these transfers.

As stated, when the stations were taken over there was a surplus over Eagle's indebtedness to Omni. This was the sum paid to Eagle's attorneys.

■ V. The issue remains whether payments made from the property in question were on claims entitled to a priority over the motor fuel tax lien or were they inferior to such liens.

Capitol by assignment succeeded to the State's right to assert a lien for motor fuel tax against Eagle. Omni was for all practical purposes Eagle's assignee.

Section 324.65, Code, 1962, establishes the lien for motor fuel tax and provides in part:

"LIEN OF FUEL TAXES—PRIORITY.

"(1) The amount of fuel taxes imposed by this chapter, including interest and penalty and costs that may accrue, shall be a lien in favor of the state upon franchises, property and rights to property, whether real or personal, then belonging to or thereafter acquired by a person liable for the payment of the fuel taxes from the date the taxes are due and payable as provided in this chapter and until the amount of the lien is paid or the property sold in payment thereof. Fuel tax liens shall have priority over any lien or encumbrance whatsoever except the lien of other state taxes having priority by law, and except that a fuel tax lien shall not have priority over any bona fide mortgagee, pledgee, attaching creditor or purchaser whose right shall have attached prior to the time the treasurer shall have filed his certificate in the office of the clerk of the court. * * *."

Section 324.38, Code, 1962, 1966, relating to motor vehicle taxes provides, in substance, that for the purpose of determining the amount of his liability for the tax imposed, each dealer shall not later than the last day of each calendar month file with the treasurer a monthly return, showing certain prescribed data for the next preceding calendar month. The return shall be accompanied by remittance in the amount of tax due for the month.

The statute gives the State a lien for the tax imposed in-

cluding interest, penalty and costs that accrue. It provides that the lien shall have priority over any lien or encumbrance whatsoever except the lien of other state taxes having priority by law. In addition to this exception, the lien has no priority over "any bona fide mortgagee, pledgee, attaching creditor or purchaser whose right shall have attached prior to the time the treasurer shall have filed his certificate in the office of the clerk of the court." Section 324.65, supra.

March 15, 1963, when the treasurer filed his certificate giving the State's lien priority as provided by this section, Omni had acquired status as an attaching creditor both to the equipment covered by the conditional sales contract and the merchandise and inventory covered by its contractual lien. These rights had attached January 28 and 29. As to the equipment covered in the sales contract Omni exercised its remedy of recovering possession upon Eagle's default. See Division IV, supra. Thereafter Eagle had no property whatever in the equipment. It had been lost in a legal manner. Universal Credit Co. v. Mamminga, supra.

As to the property covered by the contractual lien the provision in Omni's lease had created a valid chattel mortgage lien as between it and Eagle for rent and Eagle's performance of the obligations imposed on it under the lease. Evans v. Stewart, 245 Iowa 1268, 1280, 66 N.W.2d 442, 449; Mason City and Clear Lake R. Co. v. Imperial Seed Co. (N.D. Iowa C.D.), 152 F. Supp. 145, 151. To this extent the lien could have been enforced by levying execution or attachment on Eagle's default. The fact Eagle voluntarily turned the property over to Omni without the necessity of legal process does not affect Omni's status as an attaching creditor to the merchandise and inventory encumbered by its lease. Gorman v. Hellberg, supra.

It is true neither the conditional sales contract nor the lease was recorded.

Section 556.3, Code, 1962, provides: "No sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof is valid against existing creditors or subsequent purchasers without notice, * * *" unless the instrument is recorded as provided in this section.

■ Recording is not a part of the execution, and an unrecorded instrument is valid as between the parties to it. In re Estate of Lewis, 230 Iowa 694, 700, 298 N.W. 842, 845, 137 A.L.R. 562. However, this is not determinative of its status as a valid lien with respect to third parties nor as to its priority in the case of conflicting claims to the property involved. Mason City and Clear Lake R. Co. v. Imperial Seed Co., supra. Being unrecorded, the chattel mortgage is invalid as to "existing creditors or subsequent purchasers without notice." Of course the State does not have the status of a subsequent purchaser nor is it an "existing creditor" under the provisions of this Code section.

We said in In re Estate of Lewis, supra: "This court has uniformly held that the term 'existing creditors', as used in the statute, means general creditors, who have, by execution or attachment, levied upon the mortgaged property, or otherwise acquired a lien thereon, without notice of the mortgage on the part of the creditor, or of the levying officer."

The State was not of the classes protected by the recording statute. "* * * [T]he general statutory prescription is that an unrecorded mortgage is void as against creditors of the mortgagor, or his subsequent purchasers or mortgagees in good faith, and the courts construe creditors in this connection to mean those who have acquired some specific interest in the chattels, by seizure under levy or otherwise, prior to the recording of the mortgage and without notice of it." 1 Jones, Chattel Mortgages and Conditional Sales, Bowers Edition, section 247b.

■ Where the term "creditors" is not limited or qualified, by statute, the general principle adhered to is that only creditors who have acquired or fastened a lien upon the property, as by execution, attachment, or judgment, can challenge the validity of a contract of conditional sale because it is not recorded. 3 Jones, Chattel Mortgages and Conditional Sales, section 1112. Citing Warner v. Jameson, 52 Iowa 70, 72, 73, 2 N.W. 951, 953.

■ It would follow under the circumstances here, failure to record the lease as a chattel mortgage does not affect Omni's

status as an attaching creditor nor its claim to priority for those obligations secured by its lease as against the fuel tax lien. Therefore, Omni's claim for rent of $2790.02, the water bill of $104.72 received sometime prior to February 5 for three different stations for a three-month period preceding that date and the real property taxes of $1376.33 for 1962 payable in 1963, all totaling $4271.07, were a proper credit against the assets acquired by Omni under its contractual lien.

The claim for credit of $141.40, a credit card payment, had been deposited by error in Eagle's account. It was actually due Omni and would be a proper deduction.

█ VI. From the surplus of these assets Omni paid certain wages of Eagle's employees. Eagle had issued checks totaling $1061.48 for the payroll period of January 15 to 28. This was Eagle's obligation. When the checks were returned for insufficient funds Omni took assignments and paid the employees. As each of these wage claims was limited to $100 Omni asserts a total credit of $877.23. Although this item was paid by Omni as a mere volunteer, if the wage claim was entitled to priority over the fuel tax lien, Omni should be credited with $877.23. Section 324.65 does not specifically give such claims priority. However, section 626.69 provides:

"Labor claims preferred. When the property of any company * * * or person shall * * * be seized by the action of creditors, for the purpose of paying or securing the payment of the debts of such company * * * or person, the debts owing to employees for labor performed within the ninety days next preceding the seizure or transfer of such property, to an amount not exceeding one hundred dollars to each person, shall be a preferred debt and paid in full * * *."

Section 626.73 which sets up the priority to be given provides:

"Priority. Claims of employees for labor, if not contested, or if allowed after contest, shall have priority over all claims against or liens upon such property, except prior mechanics' liens for labor in opening or developing coal mines as allowed by law."

When Omni acquired possession of the merchandise and inventory under its contractual lien it was a creditor. It had

"seized" the property for the payment of Eagle's debt just as effectively as if execution had issued. Eagle's business was suspended by the action of its creditor and its assets transferred to a nominee. The fact that Eagle voluntarily surrendered possession which it could have been required to do should not operate to defeat the wage claims. As tending to support our position see Heessel v. Creston National Bank, 205 Iowa 508, 218 N.W. 298.

We do not believe it was the intent of the legislature in enacting section 324.65 to nullify the priority given by the above statutes and we now hold that the wage claims to the extent of $877.23 were entitled to priority over the motor fuel tax lien.

VII. The items thus allowed Omni as credited against the assets in question total $5289.70. So far as we are able to determine from the record and exhibits the surplus was paid to Eagle's attorneys who made various disbursements for taxes.

In its third proposition relied on, Omni contends that funds in Eagle's hands are subject to those creditors' claims who are entitled to priority over the fuel tax lien. If it is so determined, credit should be allowed, although in doing so Omni was acting as a volunteer.

Omni argues the amount paid for nonresident withholding tax and federal withholding taxes has priority and money in the hands of Eagle's attorneys was subject to the fuel tax lien and has priority over the attorneys' lien asserted by Eagle's attorneys. At trial the parties stipulated as to the dates of assessments and filing of the tax lien for each of these taxes as well as those due for state and federal unemployment tax.

The 1962 federal withholding and social security tax for the last quarter amounted to $193.89 and for the first quarter of 1963, $1134.78, a total of $1328.67. The 1962 Iowa nonresident income tax withheld was $226.06. The total disbursement for these taxes was $1554.73.

31 U.S.C.A., section 191, provides: "Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor,

not having sufficient property to pay all his debts, makes a voluntary assignment thereof * * *."

We are satisfied that the expenditures for the 1962 and 1963 federal withholding and social security taxes were entitled to priority.

Section 422.26, Code, 1962, provides in part:

"Whenever any taxpayer liable to pay a tax * * * neglects to pay same, * * * such tax, together with the costs that may accrue * * * shall be a lien in favor of the state * * *.

"The lien aforesaid shall attach at the time the tax becomes due and payable and shall continue until * * * satisfied.

"In order to preserve the aforesaid lien again subsequent mortgagees, purchasers or judgment creditors, * * * the commission shall file with the recorder of the county * * * a notice of said lien."

The nonresident income tax was due and owing not later than January 31, 1963. Under the quoted Code section the lien did not have to be filed in order to be preserved against the fuel tax lien.

In written argument Omni does not contend the state and federal unemployment taxes were prior claims.

Eagle's attorneys received money belonging to Eagle June 10, 1963. Their lien then attached. However, the fuel tax lien had established priority before this date.

VIII. In support of its remaining proposition assigned Omni contends the sums collected by Smith and garnished by the sheriff have priority. The sales tax was due and payable in quarterly installments on the last day of the month next succeeding each quarterly period. The lien here attached December 31, 1962, and under the provisions of section 324.65 was prior. The Scott County personal property tax for 1962 became a lien on January 1, 1963, and was also prior to the fuel tax lien. The city personal property taxes for 1962 became a lien on the date of levy, July 1962, and are prior.

We agree with Omni's contention as asserted in this proposition.

IX. After allowing credit for disbursements made in payment of taxes from the surplus, but adding thereto $179.65

received as an insurance premium refund, we conclude Capitol is entitled to judgment against Omni in the sum of $2711.09 with interest as provided in the trial court's decree of October 22, 1965.

X. In view of our holding as announced in Division IX, supra, we find Capitol's appeal which asserts the trial court erred in failing to award it judgment in the sum of $10,947.66, being the amount of fuel tax, interest and penalty due for the months of December and January, is without merit.

For decree in favor of Capitol in accordance with this opinion the cause is—Modified and affirmed on appeal of Omni, affirmed on cross-appeal of Capitol, and remanded.

All JUSTICES concur except JUSTICE LEGRAND, who takes no part.